# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

| | |
|---|---|
| KENNETH D. OWENS; SAMANTHA A. HOLLEY; KARA L. GARIGLIO; NICOLETTA PANTELYAT; ISABELLE SCHERER; JONATHAN TULE; and KELSEA D. WIGGINS, on behalf of themselves and all others similarly situated, | CLASS ACTION<br><br>(JURY TRIAL DEMANDED) |
| Plaintiffs, | |
| v. | |
| BANK OF AMERICA, N.A.; and BANK OF AMERICA CORPORATION, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Kenneth D. Owens, Samantha A. Holley, Kara L. Gariglio, Nicoletta Pantelyat, Isabelle Scherer, Jonathan Tule, and Kelsea D. Wiggins, individually and on behalf of all others similarly situated, complain and allege as follows based on personal knowledge as to themselves, on the investigation of their counsel, and on information and belief as to all other matters:

## NATURE OF ACTION

1.     Plaintiffs bring this Class Action Complaint against Bank of America, N.A. and Bank of America Corporation (collectively, "Bank of America" or "Defendant") for legal and equitable remedies resulting from Bank of America's assessment of overdraft fees as a result of "one-time," "non-recurring" debit card transactions that originated from the merchants Lyft, Inc., Grubhub, Inc. ("Grubhub"), Gett, Inc. ("Gett"), Eatstreet, Inc. ("Eatstreet"), PicMonkey LLC ("PicMonkey"), Neighborfavor, Inc. ("Favor"), AMI Entertainment Network, LLC ("AMI"), SeamlessWeb Professional Solutions LLC ("Seamless"), and Doordash, Inc. ("Doordash").

2.    At all times between January 1, 2012 and April 6, 2017, Bank of America promised its account holders that it "do[es] not authorize overdrafts for everyday *non-recurring* debit card transactions and ATM transactions" and "do[es] *not charge you an Overdraft Item fee* on an everyday *non-recurring* debit card transaction."  However, with respect to *recurring* debit card transactions, Bank of America promised its account holders during that period of time that it would authorize overdrafts and would charge a corresponding overdraft fee: "<u>We do charge you an Overdraft Item fee</u> each time we authorize and pay any other type of overdraft transaction [besides non-recurring transactions].  These other types of transactions include checks and other transactions made using your checking account number, *recurring debit card transactions*, Online and automatic bill payments, and ACH transactions."

3.    At all times from January 1, 2012 through April 6, 2017, Bank of America's contractual documents with account holders drew the following distinction between "non-recurring" debit card transactions (which would not be subject to overdraft fees) and "recurring" debit card transactions (which would be subject to overdraft fees):

> Everyday non-recurring debit card transactions are usually purchases made with your debit card or debit card number on a one-time or day-to-day basis. As examples, you use your debit card for purchases of groceries, gas, or coffee in the morning. Recurring debit card transactions are usually transactions that you set up to occur automatically, such as automatic bill payments. As examples, you give merchants your debit card number to use for rent, mortgage, car, or utility payments.

4.    Despite Bank of America's contractual promises to its account holders that it "do[es] not authorize overdrafts for everyday non-recurring debit card transactions and ATM transactions" and "do[es] not charge you an Overdraft Item fee on an everyday non-recurring debit card transaction," between January 1, 2012 and April 6, 2017 Bank of America systematically authorized numerous types of non-recurring debit card transactions into a negative balance – including those from Lyft, Grubhub, Gett, Eatstreet,

CLASS ACTION COMPLAINT

PicMonkey, Neighborfavor, AMI, Seamless, and Doordash – and charged a $35.00 overdraft fee for each such transaction.

5.      For people living paycheck to paycheck, like Plaintiffs and other members of the Class, Bank of America's overdraft fee practices not only damaged them monetarily but had a serious effect on their everyday lives.

6.      Plaintiffs, on behalf of themselves and the other members of the Class, bring this action to recover the overdraft fees improperly assessed by Bank of America as a result of the one-time, non-recurring debit card transactions at issue in this case, and for other legal and equitable remedies.

<u>JURISDICTION AND VENUE</u>

7.      The Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the claims of the putative class members exceed $5 million in the aggregate, exclusive of interest and costs, and because at least one of the members of the proposed class is a citizen of a different state than Bank of America.

8.      Personal jurisdiction and venue are proper in this district because Plaintiff Gariglio is a resident and citizen of Florida, because Plaintiff Gariglio's Bank of America checking account was opened, and is presently maintained, at a Bank of America financial center located in this district, because Plaintiff Gariglio's claims arose in substantial part in this district, and because Bank of America does substantial business throughout Florida and this district.

<u>PARTIES</u>

9.      Plaintiff Gariglio is a citizen of Florida and a resident of this district.  At all times mentioned herein, Plaintiff has maintained a personal checking account with Bank of America that was opened at a Bank of America branch located within this district. Plaintiffs Owens, Holley, Pantelyat, Scherer, Tule, and Wiggins are citizens and residents of Pennsylvania, Washington D.C., New York, New Jersey, Minnesota, and Ohio,

CLASS ACTION COMPLAINT

respectively, and have at all times mentioned herein maintained personal checking accounts with Bank of America.

10.     Bank of America is a national bank with its headquarters and principal place of business in Charlotte, North Carolina.  Bank of America provides, *inter alia*, retail banking services to consumers, including personal checking accounts and debit cards to Plaintiffs and the members of the putative Class.  Bank of America operates banking centers throughout Florida and the United States.

<u>FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS</u>

I.     BANK OF AMERICA PROMISES NOT TO CHARGE OVERDRAFT FEES FOR NON-RECURRING DEBIT TRANSACTIONS, BUT THEN DOES SO ANYWAY

11.     Bank of America's relationship with Plaintiffs and the other members of the Class was at all times mentioned herein governed by the Deposit Agreement – a standardized contract for deposit accounts, the terms of which are drafted by Bank of America, amended by Bank of America from time to time at its convenience and sole and complete discretion, and uniformly imposed by Bank of America on all of its customers.  *See* "Deposit Agreement and Disclosures," Bank of America, N.A., March 4, 2016, a copy of which is attached hereto as **Exhibit A** (hereinafter, the "Deposit Agreement").

12.     For the better part of the past two decades, Bank of America has issued debit cards to its personal checking account customers, including to Plaintiffs and the members of the Class, which have enabled its accountholders to make purchases, payments, withdrawals and, of particular relevance to this case, both "recurring" and "non-recurring" debit transactions.

13.     At all times mentioned herein, including between January 1, 2012 and April 6, 2017, the Deposit Agreement defined a "recurring" debit card transaction as one that occurs automatically at a regular and predetermined interval of time, like a payment for a mortgage, utility bill, insurance premium, or membership fee, and defined a "non-

CLASS ACTION COMPLAINT

recurring" debit card transaction as one that occurs on a one-time or day-to-day basis, like a purchase at a gas station.

### A. In 2010, Bank of America Begins Distinguishing Between "Non-Recurring" and "Recurring" Debit Card Transactions for Overdraft Fee Purposes, And Touts Itself as a Consumer Advocate for Having Done So

14.     In 2010, Bank of America suddenly began promising its account holders that it would cease charging $35.00 overdraft fees resulting from "one-time," "non-recurring" debit card transactions for which there are insufficient funds to cover, but would continue charging $35.00 overdraft fees resulting from "recurring" debit card transactions for which there are insufficient funds to cover.  In other words, Bank of America for the first time adopted an overdraft-fee assessment policy that made a radical distinction between two types of debit card transactions: (1) one-time debit card transactions (which it promised would be absolutely protected from overdraft fees); and (2) recurring debit card transactions (which it said could be subjected to overdraft fees).

15.     Bank of America then seized upon the distinction it had drawn between one-time, non-recurring debit card transactions and recurring debit card transactions to publicly tout, through a massive media effort, its supposedly pro-consumer decision not to charge overdraft fees on routine debit card transactions.  For example, Susan Faulkner, an executive at Bank of America, was quoted in a CNN article from 2010 as saying: "Our customers have been clear that they want to know if a purchase is going to overdraw their account."[1]  Around the same time, a New York Times article stated:  "In a move that could bring an end to the $40 cup of coffee, Bank of America said on Tuesday that it was doing away with overdraft fees on purchases made with debit cards[.]  Bank [of America] officials said that effective this summer, customers who try to make purchases with their

---

[1] H. Yousuf, *BofA to scrap overdraft fees on debit purchases*, Mar. 10, 2010, *available at* http://money.cnn.com/2010/03/10/news/companies/Bank_of_America_overdraft_fees/.

CLASS ACTION COMPLAINT

debit cards without enough money in their checking accounts will simply be declined."[2] Faulkner was quoted in the New York Times piece as well: "What our customers kept telling me is 'just don't let me spend money that I don't have'. . . .  We wanted to help them avoid those unexpected overdraft fees."[3]

16.     Accordingly, as both Ms. Faulkner surely understood and Bank of America clearly intended, this new distinction in debit card transactions caused consumers to rely upon the overdraft fee policy implicated by the distinction and to therefore expect that, when they attempt to use their debit card for a routine non-recurring purchase in the future, the transaction will only be approved if sufficient funds exist to cover the purchase, and in no event will the transaction result in an overdraft fee.

B.  **Bank of America Amends the Deposit Agreement to Provide Absolute Immunity from Overdraft Fees for Non-Recurring Debit Card Transactions**

17.     After repeatedly promising the American public that one-time debit card transactions could no longer trigger overdraft fees, in The New York Times and elsewhere, Bank of America took pen to paper and memorialized this significant, material promise in its standardized Deposit Agreement, which, as discussed above, governs Bank of America's relationship with all of its personal checking account holders, including Plaintiffs and the other members of the proposed Class.

18.     Specifically, in June 2010, consistent with its public statements in The New York Times and elsewhere, Bank of America issued a new version of its Deposit Agreement (the pertinent terms of which remained in effect without amendment or alteration until April 7, 2017), which stated in pertinent part:

---

[2] A. Martin, *Bank of America to End Debit Card Overdraft Fees*, The New York Times, Mar. 9, 2010, *available at* http://www.nytimes.com/2010/03/10/your-money/credit-and-debit-cards/10overdraft.html.

[3] *Id.*

OVERDRAFT AND DECLINED OR RETURNED ITEMS
When we determine that you do not have enough available funds in your account to cover a check or other item, then we consider the check or other item an insufficient funds item.  If you have enrolled in one of the optional Overdraft Protection plans and have enough available funds in the linked account under the Overdraft Protection plan, we transfer funds to cover the item.  Otherwise, without notice to you, we either authorize or pay the insufficient funds item and overdraw your account (an overdraft item) or we decline or return the insufficient funds item without payment (a returned item). . . .

PERSONAL ACCOUNTS - OVERDRAFT PRACTICES AND SETTINGS

<u>With our Standard Overdraft Setting, we do not authorize overdrafts for everyday non-recurring debit card transactions and ATM transactions. This means that we decline everyday non-recurring debit card transactions and ATM transactions when we determine that at the time of the transaction you may not have enough available funds in your account (or in any applicable Overdraft Protection plan) to cover the transaction</u> .  .  .  .   With this overdraft setting, we may authorize and pay overdrafts for other types of transactions. Other types of transactions include checks and other transactions made using your checking account number, recurring debit card transactions, ACH transactions, preauthorized payments, and automatic and online bill payments.

Ex. A at 11-13, 21-22 (emphasis added).

19.     The Deposit Agreement explained the distinction between "non-recurring" and "recurring" debit card transactions as follows:

*What are everyday non-recurring debit card transactions and what are recurring debit card transactions?* Everyday non-recurring debit card transactions are usually purchases made with your debit card or debit card number on a one-time or day-today basis. As examples, you use your debit card for purchases of groceries, gas, or coffee in the morning. Recurring debit card transactions are usually transactions that you set up to occur automatically, such as automatic bill payments. As examples, you give merchants your debit card number to use for rent, mortgage, car, or utility payments.

*Id.* at 12.

20.     The Deposit Agreement expressly incorporated by reference a document entitled "Schedule of Fees," a copy of which is attached hereto as **Exhibit B**.  The Schedule of Fees stated, in pertinent part:

> <u>We do not charge you an Overdraft Item fee on an everyday non-recurring debit card transaction</u>. We also do not charge you an Overdraft Item fee on a ATM transaction unless you agreed to our overdraft practices for that particular ATM transaction. We do charge you an Overdraft Item fee each time we authorize and pay any other type of overdraft transaction. These other types of transactions include checks and other transactions made using your checking account number, recurring debit card transactions, Online and automatic bill payments, and ACH transactions.

*See* Ex. B, at 13 (emphasis added).

21.     In July 2014, Bank of America drafted and imposed on account holders a document entitled "Important Information about Your Card Agreement and Disclosure," attached hereto as **Exhibit C**, which stated in pertinent part:

> Overdrafts and Unposted Transactions
> <u>When you do not have enough available funds in your account ... to cover everyday non-recurring debit card purchases or ATM withdrawals, we will decline the transaction and you will not be subject to overdraft fees</u>.  For checks, ACH, recurring debit card transactions and online bill payments, we may decline or return the transaction unpaid or we may complete it and overdraw your account.

*See* Ex. C, ¶¶ 4b, 7 (emphasis added).

22.     Thus, by the express terms of the Deposit Agreement (and related documents) in effect at all times between January 1, 2012 and April 6, 2017, Bank of America promised its personal checking account holders, including Plaintiffs and the other members of the Class, that it would only charge overdraft fees as a result of recurring debit card transactions authorized into a negative balance, and would never charge overdraft fees as a result of non-recurring debit card transactions authorized into a negative balance.

23.     During this same period of time, January 1, 2012 through April 6, 2017, Bank of America's website reiterated its overdraft fee policies pertaining to recurring and non-recurring transactions as follows:

> ATM withdrawals and everyday, non-recurring debit card transactions (individual debit card purchases such as at the grocery store or a one-time online purchase), will only be authorized when we determine you have enough available funds in your eligible account or in your eligible linked Overdraft Protection account at the time of the transaction. Otherwise, we typically decline the transaction and we do not charge an Overdraft Item fee.
>
> For other types of transactions, such as checks, Bill Pay and other electronic payments, as well as recurring debit card payments we may pay transactions when you don't have enough available funds in your checking account or linked Overdraft Protection account at the time of the transaction.

*See* Glossary of Banking Terms, Definition of "Standard Setting" (also available at https://www.bankofamerica.com/deposits/manage/glossary.go (last visited Nov. 14, 2016)), a copy of which is attached hereto as **Exhibit D**.

24.     Likewise, the "FAQs" section of the Bank of America webpage pertaining to "overdraft services," also in effect at all times between January 1, 2012 and April 6, 2017, stated in pertinent part:

> When you use your debit card for everyday, non-recurring purchases, when we determine you don't have enough funds in your account or linked Overdraft Protection account our standard practice is to decline the transaction, and we do not charge an overdraft fee.
>
> For other types of transactions – like checks, Bill Pay and other electronic payments, as well as recurring debit card payments – made using your checking account number, we may charge you a NSF: Returned Item fee each time we decline or return one of these transactions. If we pay one of these transactions, we charge you an Overdraft Item fee.

*See* "FAQs: With Bank of America's Overdraft Settings, will I still be subject to Overdraft and NSF: Returned Item fees?," at 4, a copy of which is attached hereto as **Exhibit E**, *also available at* https://www.bankofamerica.com/deposits/manage/faq-overdraft-services.go (last visited Nov. 14, 2016).

25.     Another FAQ section of Bank of America's website stated, likewise in reference to the contractual promises in the Deposit Agreement in effect between January 1, 2012 and April 6, 2017, that "[w]e do not charge you an Overdraft item fee on an everyday non-recurring debit transaction."  *See* "FAQs: Bank Account Rates and Fees, What is an Overdraft Item fee?," at 1, a copy of which is attached hereto as **Exhibit F**, *also available at* https://www.bankofamerica.com/deposits/manage/faq-account-rates-fees.go (last visited Nov. 14, 2016).

26.     And on the "Checking Clarity Statement" page of its website, described as providing "checking fee and policy information in a simple format so you know the ins and outs of your account," Bank of America provided its account holders a document entitled "Overview of Bank of America Core Checking key policies and fees", which, with respect to the Deposit Agreement in effect between January 1, 2012 and April 6, 2017, stated in pertinent part: "To help you avoid fees, we won't authorize ATM withdrawals or everyday debit card purchases when you don't have enough money in your account at the time of the transaction." *See* "Checking Clarity Statement (landing page)," a copy of which is attached hereto as **Exhibit G**, *also available at* https://www.bankofamerica.com/deposits/checking/checking-clarity-statement.go   (last visited Nov. 14, 2016); *see also* "Overview of Bank of America Core Checking key policies and fees," Aug. 2016, a copy of which is attached hereto as **Exhibit H**.

27.     The foregoing contractual promises made by Bank of America in its Deposit Agreement and other account-related documents – all of which remained in effect without material change for the next seven years, including at all times between January 1, 2012 and April 6, 2017 – were repeatedly broken by Bank of America over that same period of time, damaging Plaintiffs and the other members of the Class, as discussed below.

**C. Bank of America Breaches the Deposit Agreement by Charging Overdraft Fees as a Result of Non-Recurring Debit Card Transactions Authorized into Negative Balances**

28.     The debit card transaction processing and overdraft fee assessment practices employed by Bank of America from January 1, 2012 through April 6, 2017 were contrary to the plain language of the governing Deposit Agreement and other account-related documents in effect during that period of time, in two primary ways.

29.     First, between January 1, 2012 and April 6, 2017, many one-time, "non-recurring" debit card transactions (within the meaning of the term "non-recurring" in the Deposit Agreement) improperly posted to Bank of America checking accounts as "recurring" debit card transactions, without being properly reclassified as "non-recurring" debit card transactions.  For example, Bank of America debit card charges from Lyft, Grubhub, Gett, Eatstreet, PicMonkey, Neighborfavor, AMI, Seamless, and Doordash were misclassified during this period of time as "recurring," even though they were plainly "non-recurring" within the meaning of the Deposit Agreement and related documents in effect between January 1, 2012 and April 6, 2017.

30.     Second, between January 1, 2012 and April 6, 2017, Bank of America systematically authorized into a negative balance and charged $35.00 overdraft fees for these misclassified non-recurring debit card transactions.[4]  Bank of America assessed these fees despite its repeated contractual representations to all account holders between January 1, 2012 and April 6, 2017 that (1) it will only authorize, and will only charge overdraft fees for, recurring debit card transactions for which there are insufficient available funds to cover; and (2) that it will not authorize, and will not charge overdraft fees for, non-recurring debit card transactions for which there are insufficient funds to cover.

---

[4] Egregiously, most of these misclassified charges are of amounts less than the $35.00 fees imposed by Bank of America.

CLASS ACTION COMPLAINT

## II.   PLAINTIFFS ARE REPEATEDLY ASSESSED OVERDRAFT FEES FOR ONE-TIME, NON-RECURRING DEBIT CARD PURCHASES

31.    Between January 1, 2012 and April 6, 2017, Bank of America repeatedly authorized "non-recurring" debit card transactions, as defined in the Deposit Agreement and related account documents in effect between January 1, 2012 and April 6, 2017, into negative balances in Plaintiffs' personal checking accounts, and charged Plaintiffs $35.00 overdraft fees as a result of each such transaction.

32.    The one-time, non-recurring, and overdraft fee-triggering debit card transactions at issue in this case originated from such widely-popular, "gig economy"-type merchants as Lyft, Grubhub, Gett, Eatstreet, PicMonkey, Neighborfavor, AMI, Seamless, and Doordash.

33.    On June 15, 2015, Plaintiff Gariglio used her Bank of America debit card to make a one-time purchase from PicMonkey, a photograph service company, in the amount of $33.00. This transaction constituted a "non-recurring" debit card transaction within the meaning of the Deposit Agreement and related documents in effect between January 1, 2012 and April 6, 2017 because the transaction was made on a one-time basis and was not set up to occur automatically at a present interval of time. Even though Plaintiff Gariglio's checking account lacked sufficient funds to cover this one-time, non-recurring debit card transaction with PicMonkey, Bank of America authorized the transaction into a negative balance anyway.  And later the same day, Bank of America assessed a $35.00 overdraft fee to Plaintiff Gariglio's checking account as a result of the transaction.

34.    On June 29, 2015, Plaintiff Owens used his Bank of America debit card to make a one-time purchase from Lyft, a ridesharing company, in the amount of $7.77. This transaction constituted a "non-recurring" debit card transaction within the meaning of the Deposit Agreement and related documents in effect between January 1, 2012 and April 6, 2017 because the transaction was made on a one-time basis and was not set up to occur automatically at a present interval of time. Even though Plaintiff Owens's

checking account lacked sufficient funds to cover this one-time, non-recurring debit card transaction with Lyft, Bank of America authorized the transaction into a negative balance anyway.  And later the same day, Bank of America assessed a $35.00 overdraft fee to Plaintiff Owens's checking account as a result of the transaction.

35.    On September 21, 2015, Plaintiff Pantelyat used her Bank of America debit card to make a one-time purchase from Gett, an on-demand transportation company, in the amount of $3.40.   This transaction constituted a "non-recurring" debit card transaction within the meaning of the Deposit Agreement and related documents in effect between January 1, 2012 and April 6, 2017 because the transaction was made on a one-time basis and was not set up to occur automatically at a present interval of time. Even though Plaintiff Pantelyat's checking account lacked sufficient funds to cover this one-time, non-recurring debit card transaction with Gett, Bank of America authorized the transaction into a negative balance anyway.  And later the same day, Bank of America assessed a $35.00 overdraft fee to Plaintiff Pantelyat's checking account as a result of the transaction.

36.    On September 7, 2016, Plaintiff Scherer used her Bank of America debit card to make a one-time purchase from Eatstreet, a food-delivery company, in the amount of $16.57.  This transaction constituted a "non-recurring" debit card transaction within the meaning of the Deposit Agreement and related documents in effect between January 1, 2012 and April 6, 2017 because the transaction was made on a one-time basis and was not set up to occur automatically at a present interval of time. Even though Plaintiff Scherer's checking account lacked sufficient funds to cover this one-time, non-recurring debit card transaction with Eatstreet, Bank of America authorized the transaction into a negative balance anyway.  And later the same day, Bank of America assessed a $35.00 overdraft fee to Plaintiff Scherer's checking account as a result of the transaction.

CLASS ACTION COMPLAINT

37.     On March 13, 2017 and June 13, 2016, Plaintiff Holley used her Bank of America debit card to make one-time purchases from AMI, a jukebox operator, in the amount of $10.00, and from Grubhub, the parent company of Eat24 and Seamless, all food-delivery companies, in the amount of $33.11.  These transactions constituted "non-recurring" debit card transactions within the meaning of the Deposit Agreement and related documents in effect between January 1, 2012 and April 6, 2017 because the transactions were each made on a one-time basis and none of them was set up to occur automatically at a present interval of time. Even though Plaintiff Holley's checking account lacked sufficient funds to cover these one-time, non-recurring debit card transactions with AMI and Grubhub/Eat24/Seamless, Bank of America authorized the transactions into a negative balance anyway.   And later those same days, Bank of America assessed a $35.00 overdraft fee to Plaintiff Holley's checking account as a result of each transaction.

38.     On March 14, 2017, Plaintiff Wiggins used her Bank of America debit card to make a one-time purchase from Favor, a food-delivery company, in the amount of $16.80.  This transaction constituted a "non-recurring" debit card transaction within the meaning of the Deposit Agreement and related documents in effect between January 1, 2012 and April 6, 2017 because the transaction was made on a one-time basis and was not set up to occur automatically at a present interval of time. Even though Plaintiff Wiggins's checking account lacked sufficient funds to cover this one-time, non-recurring debit card transaction with Favor, Bank of America authorized the transaction into a negative balance anyway.  And later the same day, Bank of America assessed a $35.00 overdraft fee to Plaintiff Wiggins's checking account as a result of the transaction.

39.     On March 20, 2017, Plaintiff Tule used his Bank of America debit card to make a one-time purchase from Doordash, a courier company, in the amount of $29.90. This transaction constituted a "non-recurring" debit card transaction within the meaning of the Deposit Agreement and related documents in effect between January 1, 2012 and

April 6, 2017 because the transaction was made on a one-time basis and was not set up to occur automatically at a present interval of time. Even though Plaintiff Tule's checking account lacked sufficient funds to cover this one-time, non-recurring debit card transaction with Doordash, Bank of America authorized the transaction into a negative balance anyway.  And later the same day, Bank of America assessed a $35.00 overdraft fee to Plaintiff Tule's checking account as a result of the transaction.

40.     In addition to Bank of America's assessment of the overdraft fees described in paragraphs 33-39 above, on numerous other occasions between January 1, 2012 and April 6, 2017 Bank of America also assessed $35.00 overdraft fees to Plaintiffs' personal checking accounts as a result of other one-time, "non-recurring" debit card transactions (within the meaning of the Deposit Agreement and related documents in effect over that period of time), including such transactions with Lyft, Grubhub, Gett, Eatstreet, PicMonkey, Neighborfavor, AMI, Seamless, and Doordash.

41.     The Deposit Agreement and other related account documents in effect between January 1, 2012 and April 6, 2017 expressly prohibited the imposition of any overdraft fees as a result of the non-recurring debit card transactions at issue in this case that originated from Lyft, Grubhub, Gett, Eatstreet, PicMonkey, Neighborfavor, AMI, Seamless, and Doordash.

42.     In imposing and collecting overdraft fees as a result of the one-time, non-recurring debit card transactions at issue in this case between January 1, 2012 and April 6, 2017, Bank of America breached the Deposit Agreement and other account-related documents that governed its relationship with Plaintiffs and the other members of the Class, causing them monetary damages.

<u>CLASS ALLEGATIONS</u>

43.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies

the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

44. The proposed Class is defined as:

> All individuals in the United States who, at any time between January 1, 2012 and April 6, 2017, held a personal checking account with Bank of America that was assessed (and was not refunded by Bank of America) an overdraft fee as a result of a "non-recurring" debit card transaction authorized into a negative account balance with any of the following merchants: Lyft, Inc., Grubhub, Inc., Gett, Inc., Eatstreet, Inc., PicMonkey LLC, Neighborfavor, Inc., AMI Entertainment Network, LLC, SeamlessWeb Professional Solutions LLC, or Doordash, Inc.

45. Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

46. Excluded from the Class are Bank of America, its parents, subsidiaries, affiliates, officers and directors, any entity in which Bank of America has a controlling interest, all customers who make a timely election to be excluded, governmental entities, counsel for the parties, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

47. The members of the Class are so numerous that joinder is impractical. On information and belief, the Class consists of tens of thousands of members, the identities of whom are within the knowledge of Bank of America and can be ascertained only by resort to Bank of America's records.

48. The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class members, were charged overdraft fees by Bank of America between January 1, 2012 and April 6, 2017 as a result of non-recurring debit card transactions that were mis-classified as recurring transactions and authorized into a negative balance. Plaintiffs, like all Class members, have been damaged by Bank of America's misconduct in that they were assessed unlawful overdraft charges in breach of the governing Deposit Agreement. Furthermore, the factual basis of Bank

of America's misconduct is common to all Class members and represents a common thread of unlawful, unfair, and unconscionable conduct resulting in injury to all members of the Class.

49.     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.   Among the questions of law and fact common to the Class are whether Bank of America:

a.  Authorized into a negative account balance between January 1, 2012 and April 6, 2017 any debit card transactions with Lyft, Grubhub, Gett, Eatstreet, PicMonkey, Neighborfavor, AMI, Seamless, and Doordash that were in fact "non-recurring," within the meaning given to that terms by the relevant Bank of America contractual documents in effect between January 1, 2012 and April 6, 2017;

b.  Imposed any overdraft fees between January 1, 2012 and April 6, 2017 on any debit card transactions with Lyft, Grubhub, Gett, Eatstreet, PicMonkey, Neighborfavor, AMI, Seamless, and Doordash that were "non-recurring" in nature, within the meaning given to that term by the relevant Bank of America contractual documents in effect between January 1, 2012 and April 6, 2017;

50.     Other questions of law and fact common to the Class include:

a.  The proper method or methods by which to measure damages;

b.  Whether the Class is entitled to interest that has accrued on any improperly assessed overdraft fees; and

c.  The declaratory relief to which the Class are entitled.

51.     Plaintiffs' claim are typical of the claims of other Class members in that they arise out of the same overdraft policies governed by Bank of America's Deposit Agreement and other related documents in effect between January 1, 2012 and April 6, 2017, and arise out of the same conduct and practices of Bank of America in processing the same merchants' transactions and imposing overdraft fees on such transactions between January 1, 2012 and April 6, 2017.  Plaintiffs have no interests antagonistic to the interests of any other Class member.

52.     Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of consumer class actions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

53.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the enormity of the financial resources of Bank of America, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, Class members would lose their rights by attrition.

54.     Even if Class members could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved in this action, individualized litigation would significantly delay and cause expense to all parties and the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

CLASS ACTION COMPLAINT

## CAUSE OF ACTION

### BREACH OF CONTRACT
**(By Plaintiffs Individually and On Behalf of the Class)**

55.     Plaintiffs repeat and incorporate herein all allegations from paragraphs 1-54 above.

56.     Plaintiffs and all members of the Class contracted with Bank of America for bank account deposit, checking, ATM, and debit card services, as embodied in Bank of America's Deposit Agreement and related account documentation in effect between January 1, 2012 and April 6, 2017.

57.     Bank of America breached the terms of the Deposit Agreement and related account documentation in effect between January 1, 2012 and April 6, 2017 by charging overdraft fees to the personal checking accounts of Plaintiffs and the other members of the Class as a result of non-recurring debit card transactions authorized into a negative balance between January 1, 2012 and April 6, 2017.

58.     In plain, clear, and simple language, in the Deposit Agreement and related account documentation in effect between January 1, 2012 and April 6, 2017, Bank of America promised Plaintiffs and all other members of the Class (1) that it would not authorize, and would not charge an overdraft fee on, a non-recurring debit card transaction where insufficient funds exist to cover the transaction; and (2) that it would authorize, and would charge an overdraft fee on, a recurring debit card transaction where insufficient funds exist to cover the transaction.  *See* Ex. A, at 12-13.

59.     Bank of America breached the express terms of the Deposit Agreement and other related account documentation in effect between January 1, 2012 and April 6, 2017 when it authorized into a negative balance, and then assessed overdraft fees on, "non-recurring" debit card transactions initiated between January 1, 2012 and April 6, 2017.

60.     Specifically, Bank of America breached its contractual promises to Plaintiffs and all members of the Class by mislabeling one-time, non-recurring Lyft,

- 19 -

Grubhub, Gett, Eatstreet, PicMonkey, Neighborfavor, AMI, Seamless, and Doordash transactions as "recurring" debit card transactions, as those terms are defined in the Deposit Agreement and other related account documentation in effect between January 1, 2012 and April 6, 2017, and by authorizing into negative balances and then imposing $35.00 overdraft fees as a result of such transactions made between January 1, 2012 and April 6, 2017.

61.     At all times between January 1, 2012 and April 6, 2017, the Lyft, Grubhub, Gett, Eatstreet, PicMonkey, Neighborfavor, AMI, Seamless, and Doordash charges at issue in this case constituted "non-recurring" transactions within the meaning of the Deposit Agreement and related documentation in effect between January 1, 2012 and April 6, 2017.

62.     At no time between January 1, 2012 and April 6, 2017 did any contractual provision exist authorizing Bank of America to charge overdraft fees as a result of the non-recurring debit card transactions at issue in this case initiated by Plaintiffs or any other Class member.

63.     Plaintiffs and members of the Class have performed all of the obligations imposed on them under the Deposit Agreement and related documentation in effect between January 1, 2012 and April 6, 2017.

64.     Plaintiffs and members of the Class sustained monetary damages between January 1, 2012 and April 6, 2017 as a result of Bank of America's breaches of the Deposit Agreement and related account documentation in effect between January 1, 2012 and April 6, 2017.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Kenneth D. Owens, Samantha A. Holley, Kara L. Gariglio, Nicoletta Pantelyat, Isabelle Scherer, Jonathan Tule, and Kelsea D. Wiggins, individually and on behalf of the proposed Class, demand a jury trial on all claims so triable and judgment as follows:

A.      Declaring Bank of America's overdraft fee practices described above to be wrongful, unfair, and unconscionable, and in breach of the Deposit Agreement;

B.      Awarding actual damages and restitution in an amount according to proof for all overdraft fees collected by Bank of America by Plaintiffs and the Class resulting from the contractual breaches and other wrongs alleged herein;

C.      Awarding costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

D.      Awarding such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs, on behalf of themselves and the Class, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated:  February 15, 2019              Respectfully submitted,


By: s/  Frank S. Hedin
        Frank S. Hedin

HEDIN HALL LLP
Frank S. Hedin (FBN 109698)
fhedin@hedinhall.com
David W. Hall*
dhall@hedinhall.com
1395 Brickell Ave, Suite 900
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801

**AHDOOT & WOLFSON, PC**
Robert Ahdoot*
rahdoot@ahdootwolfson.com
Tina Wolfson*
twolfson@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111
Fax: (310) 474-8585

* *Pro Hac Vice* Application Forthcoming

*Counsel for Plaintiffs and the Putative Class*