| | |
|---|---|
| KENNETH D. OWENS; SAMANTHA A. HOLLEY; KARA L. GARIGLIO; NICOLETTA PANTELYAT; ISABELLE SCHERER; JONATHAN TULE; and KELSEA D. WIGGINS, on behalf of themselves and all others similarly situated, | Hon. Marcia G. Cooke, Presiding<br><br>Hon. Magistrate Jonathan Goodman |
| Plaintiffs, | |
| v. | |
| BANK OF AMERICA, N.A.; and BANK OF AMERICA CORPORATION, | |
| Defendants. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Kenneth D. Owens, Samantha A. Holley, Kara L. Gariglio, Nicoletta Pantelyat, Isabelle Scherer, Jonathan Tule, and Kelsea D. Wiggins, on behalf of themselves and the proposed Class, respectfully move on an unopposed basis for preliminary approval of the proposed class action Settlement entered into between Plaintiffs and Defendants Bank of America, N.A. and Bank of America Corporation (collectively, "Bank of America"), as memorialized in the "Settlement Agreement and Release" ("Settlement Agreement" or "SA") attached as Exhibit 1 to the declaration of Frank S. Hedin ("Hedin Decl.") filed concurrently herewith.[1]

## I.    INTRODUCTION

The present case is a putative class action in which Plaintiffs allege that Bank of America breached its contractual obligations to accountholders by assessing overdraft fees as a result of "non-recurring" debit card transactions with the following "gig economy"-type Merchants: Lyft,

---

[1]    Unless otherwise defined herein, all capitalized terms have the same force, meaning and effect as ascribed in the "Definitions" section of the Settlement Agreement (SA ¶¶ 1-57). A proposed Preliminary Approval Order entering the relief requested herein is attached hereto.

Inc., Grubhub, Inc., Gett, Inc., Eatstreet, Inc., PicMonkey LLC, Neighborfavor, Inc., AMI Entertainment Network, LLC, SeamlessWeb Professional Solutions LLC, and Doordash, Inc. Plaintiffs allege that Bank of America's assessment of $35 fees for overdrafts triggered by one-time, "non-recurring" debit card transactions with these Merchants (as opposed to "recurring" debit card transactions, for which Bank of America was permitted to assess overdraft fees) breached its Deposit Agreement with accountholders, damaging them monetarily. The Parties reached the proposed Settlement, as memorialized in the Settlement Agreement submitted together herewith (*see* Hedin Decl., Ex. 1), through extensive arm's-length negotiations over the course of several months, including two days of in-person mediation sessions at JAMS before a former federal magistrate judge.

If approved, the Settlement would automatically provide substantial monetary relief to 73,235 Settlement Class Members. As set forth in the Settlement Agreement, Bank of America has agreed to pay $4,950,000.00 (four million nine-hundred fifty thousand and 00/100 dollars) to form an all-cash, non-reversionary Settlement Fund for the benefit of the Settlement Class, which includes all current and former Bank of America accountholders who incurred at least one overdraft fee as a result of a non-recurring debit card transaction with a Merchant during the Class Period. Significantly, Settlement Class Members need not take any action to receive a payment from the Settlement – rather, Settlement Shares are to be paid automatically to all Settlement Class Members who do not exclude themselves, via direct deposit to their checking accounts (for individuals whose accounts remain open) or by check to their current addresses (for those whose accounts are closed).

The $4.95 million Settlement Fund represents approximately 79% of the total aggregate value of the overdraft fees paid by the Settlement Class ($6.28 million) as a result of Bank of America's allegedly wrongful conduct – an excellent result that ranks among the highest recoveries, on a percentage-of-total-damages basis, ever achieved in an overdraft fee class action. *Cf., e.g., In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (overdraft fee settlement against Bank of America recovering between approximately 9%

and 45% of the maximum damages recoverable at trial); *Bodnar v. Bank of Am., N.A.,* No. CV 14-3224, 2016 WL 4582084, at *4 (E.D. Pa. Aug. 4, 2016) (overdraft fee settlement against Bank of America recovering between approximately 13% and 48% of the maximum damages recoverable at trial); *Farrell v. Bank of America*, Case No. 3:16-cv-00492-L-WVG (S.D. Cal.) ECF No. 69-1 at 22 (Oct. 31, 2017) (overdraft fee settlement against Bank of America recovering approximately 9% of the maximum damages recoverable at trial).

The Settlement Fund will be used to pay: (1) all costs associated with the administration of the Settlement, projected at $115,709; (2) Service Payments of up to $2,500 each to the six Class Representatives, subject to approval by the Court; and (3) a Fee and Expense Award of up to one-third (33.3%) of the Settlement Fund (or $1,650,000) and reasonable litigation costs, subject to approval by the Court. If approved, Class Counsel estimate that each Settlement Class Member will receive approximately $17.53 <u>for each</u> $35 Merchant Overdraft Fee charged to his or her Bank of America account as a result of a qualifying non-recurring debit card transaction with one of the Merchants in question.

The Settlement is the product of a thorough factual investigation, a comprehensive evaluation of legal issues underlying Plaintiffs' claims, and a carefully-formulated litigation strategy aimed at obtaining meaningful relief for the Settlement Class as efficiently as possible. As a result of Class Counsel's robust pre-filing investigation and careful preparation of this case, Plaintiffs and their counsel were able to quickly pinpoint and then obtain the materials necessary to intelligently assess the risks, uncertainties, burdens, and costs posed by further litigation, as well as the substantial and immediate benefits that might be obtained for the Settlement Class through early resolution. Over the course of two days of arms'-length, in-person mediation facilitated by an experienced mediator at JAMS, followed by further negotiations between the Parties over the course of a number of months, Class Counsel negotiated a fair, reasonable, and adequate Settlement of this Action on behalf of the Settlement Class, on the terms set forth in the Settlement Agreement.

Class Counsel, Defense Counsel, and the proposed Settlement Administrator devised a comprehensive Notice Program that easily comports with due process and the procedural requisites of Rule 23. The proposed Class Notice advises Settlement Class Members of the key elements of the Settlement and will be mailed directly to every Settlement Class Member.

The strength of this Settlement speaks for itself, and Class Counsel firmly believe that it is in the best interests of the Settlement Class. Accordingly, Plaintiffs respectfully request that the Court, as set forth in the proposed Preliminary Approval Order attached hereto: (1) grant preliminary approval of the proposed Settlement; (2) provisionally certify the proposed Settlement Class; (3) appoint as Class Counsel Ahdoot & Wolfson, PC and Hedin Hall LLP; (4) appoint Plaintiffs Kenneth D. Owens, Samantha A. Holley, Kara L. Gariglio, Nicoletta Pantelyat, Isabelle Scherer, Jonathan Tule, and Kelsea D. Wiggins as Settlement Class Representatives; (5) approve the proposed Notice Plan; (6) appoint KCC LCC to serve as the Settlement Administrator; and (7) schedule the Final Approval Hearing and related dates and deadlines.

## II.     BACKGROUND

As set forth in the Class Action Complaint, Plaintiffs allege that Bank of America improperly assessed overdraft fees to its personal deposit account holders as a result of "one-time," "non-recurring" debit card transactions made with the Merchants Lyft, Grubhub, Gett, Eatstreet, PicMonkey, Favor, AMI, Seamless, and Doordash. (*See generally* ECF No. 1, Class Action Complaint ("Complaint").) The Complaint alleges that Bank of America, in its Deposit Agreement with account holders, promised that it would "not authorize overdrafts for everyday *non-recurring* debit card transactions and ATM transactions" and would "*not charge ... an Overdraft Item fee* on an everyday *non-recurring* debit card transaction." (*Id.* ¶ 2.) The Deposit Agreement distinguished between "non-recurring" and "recurring" debit card transactions follows: (i) "non-recurring" debit card transactions (which are not subject to overdraft fees) are "usually purchases made with your debit card or debit card number on a one-time or day-to-day basis [such as] groceries, gas, or coffee in the morning;" and (ii) "recurring" debit card transactions (which are subject to overdraft fees) as "transactions that …[are] set up to occur

4

automatically, such as automatic bill payments." (*Id.* ¶ 19.) Despite these express contractual provisions, Bank of America charged $35 overdraft fees on numerous types of non-recurring debit card transactions – including those from Lyft, Grubhub, Gett, Eatstreet, PicMonkey, Neighborfavor, AMI, Seamless, and Doordash. (*Id.* ¶ 4.)

In March of 2018, Class Counsel commenced a wide-ranging pre-filing investigation into the relevant facts and law giving rise to Plaintiffs' claims. (Hedin Decl. ¶ 12; Declaration of Robert Ahdoot ("Ahdoot Decl.") filed concurrently herewith, ¶ 4.)

Class Counsel's investigation included, *inter alia*, interviewing dozens of Bank of America deposit account holders, analyzing hundreds of account holders' bank statements and overdraft fee notices, and thoroughly reviewing various iterations of Bank of America's Deposit Agreement, the contractual document governing debit card account holders' relationships with Bank of America. Class Counsel reviewed publicly-accessible social media posts and complaints that consumers had "tweeted" to Bank of America regarding issues relevant to this matter, together with Bank of America's responses thereto. (*Id.*) And to gain a full picture of the financial services technologies that underlie these claims, Class Counsel conducted a detailed investigation into the technology (including publicly-accessible APIs) used by various payment processors involved in the initiation, authorization, coding and classifying of the transactions in question. (*Id.*)

In developing the theory of liability in this case, Class Counsel began by considering each of the potential avenues of recovery, carefully assessing the viability of particular claims for relief, researching and analyzing each of the various legal issues relevant to the merits of potential claims, and determining how to best present such claims on behalf of the Settlement Class to maximize the likelihood of prevailing at class certification. (Hedin Decl. ¶ 13; Ahdoot Decl. ¶ 5.) Class Counsel reviewed various releases of liability entered into between classes of consumers and Bank of America in prior overdraft fee settlements, to ensure there was no

overlap with the claims alleged in this Action.[2] (*Id.*) Additionally, Class Counsel performed an in-depth analysis into the likelihood of Bank of America successfully compelling arbitration as a non-signatory to any contracts entered into between Plaintiffs (or any Settlement Class Members) and the Merchants whose transactions triggered the overdraft fees in this case. (*Id.*)

On February 15, 2019, Plaintiffs initiated this action by filing the Class Action Complaint. (ECF No. 1.)

On March 22, 2019, Bank of America filed its Answer to the Complaint. (ECF No. 10.) Bank of America denies any and all liability to Plaintiffs and the Settlement Class. Bank of America has indicated, through counsel, that it believes it would ultimately prevail in its defense to the Action absent the Settlement.

Following extensive preliminary negotiations, the Parties attended two days of in-person mediation sessions in Los Angeles, California, under the supervision of a retired United States Magistrate Judge and JAMS mediator. (Hedin Decl. ¶ 18; Ahdoot Decl. ¶ 10.) Prior to and during their settlement discussions and mediations, the Parties exchanged documents and data on an arms'-length basis to enable Plaintiffs and Class Counsel to adequately evaluate the scope of the potential class-wide liability and thus intelligently engage in meaningful settlement discussions on behalf of the Settlement Class. (Hedin Decl. ¶ 23; Ahdoot Decl. ¶ 15.)

The Parties also conducted extensive arms'-length negotiations through many discussions and in-person meetings, both between and after the two mediations, before ultimately agreeing on the principal terms of the proposed Settlement. (Hedin Decl. ¶ 24; Ahdoot Decl. ¶ 16.) Class Counsel also verified important facts – including the size of the Settlement Class, the total fees incurred by the Settlement Class, the total number of overdrafts at issue, and the methodology utilized by Bank of America to compute those figures. (Hedin Decl. ¶ 21; Ahdoot Decl. ¶ 13.)

---

[2] *See e.g. Bodnar v. Bank of America*, Case No. 5:14-cv-03224-EGS, ECF No. 73-2 (E.D. Pa., Jan. 13, 2016) (settlement agreement and release in a matter involving overdrafts charged by Bank of America on certain debit card transactions); *Farrell v. Bank of America*, Case No. 3:16-cv-00492-L-WVG, ECF No. 69-2 (S.D. Cal., Oct. 31, 2017) (settlement agreement and release in a matter involving "extended" overdraft charges imposed by Bank of America on deposit accounts).

Through these robust discovery efforts, Class Counsel determined that Bank of America collected a total of $6,282,360 in fees as a result of the overdrafts at issue (representing 179,496 separate overdrafts, each incurring a $35 overdraft fee) from 73,235 Settlement Class Members. (Hedin Decl. ¶ 22; Ahdoot Decl. ¶ 14.)

The Parties held a competitive bidding process to procure claims administration estimates from three well-known settlement administration companies, at the conclusion of which the Parties selected KCC, LLC ("KCC") as the proposed Settlement Administrator. (Hedin Decl. ¶¶ 25-26; Ahdoot Decl. ¶¶ 17-18.) The Notice Plan and each document comprising the Class Notice were negotiated and exhaustively refined by Class Counsel, with input from experts at KCC, to ensure that these materials are clear, straightforward, and will be understood by members of the Settlement Class. (Hedin Decl. ¶ 27; Ahdoot Decl. ¶ 19.)

On June 4, 2019, after months of negotiation, the Parties executed the formal Settlement Agreement.

The Settlement is thus the product of a thorough investigation, extensive discovery, lengthy arms'-length negotiations before an experienced mediator, and a competitive bidding process resulting in the selection of an experienced Settlement Administrator.

## III.    PROPOSED SETTLEMENT TERMS

A copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Frank S. Hedin, the material terms of which are summarized as follows:

### A.    The Settlement Class, Settlement Class Representatives, and Class Counsel

Pursuant to the Settlement Agreement, Plaintiff requests that the Court provisionally certify the following Settlement Class:

> All individuals in the United States who, at any time between January 1, 2012 and April 30, 2017, held a personal checking account with Bank of America that was assessed an overdraft fee as a result of a non-recurring debit card transaction with any of the Merchants. Excluded from the Settlement Class are: (a) all persons who are employees, directors, and officers of Bank of America, N.A. or Bank of America Corporation; (b) Class Counsel; and (c) the Judges presiding over this Action and their Court staff.

(SA ¶ 47.)

**B.      Monetary Relief to Settlement Class Members**

Bank of America has agreed to deposit, within ten (10) days of the Court's entry of the Preliminary Approval Order, cash in the amount of $4,950,000 into an interest-bearing Escrow Account for the benefit of the Settlement Class, on a non-reversionary basis.  (SA ¶ 89.)  The Escrow Account will be created and administered by KCC in accordance with the terms of the Settlement Agreement.  (*Id*.)  Any interest that accrues on the funds in the Escrow Account shall be added to the Settlement Fund and disbursed to the Settlement Class.  (*Id*.)

Upon entry of a Final Judgment, the Settlement Fund will be <u>automatically</u> distributed to Settlement Class Members, on a per-overdraft fee basis, after first deducting the following Settlement expenses: (i) the Settlement's Administration Expenses (estimated to be $115,709) (Hedin Decl. ¶ 26; Ahdoot Decl. ¶ 18.); (ii) any Attorneys' Fee and Expense Award approved by the Court (up to one-third of the Settlement Fund); (iii) any Service Payments approved by the Court (up to $2,500 to each Class Representative); and (iv) any Taxes due on the interest earned by the Escrow Account.  (SA ¶ 95.)

The Settlement Fund Balance – *i.e.*, the Settlement Fund net of the expenses outlined in the preceding paragraph – will be divided by the total number of all Merchant Overdraft Fees paid by Settlement Class Members to yield a "Per Merchant Overdraft Fee Amount." (*Id.*)  Each Settlement Class Member's Settlement Share shall equal the "Per Merchant Overdraft Fee Amount" multiplied by the number of Merchant Overdraft Fee(s) paid by and not refunded to that Settlement Class Member.  (*Id.*)

For example, and for illustrative purposes only, assuming that (i) the interest accrued on the Settlement Fund less Taxes is $1,000 (a conservative estimate as the Settlement Fund will likely be in the interest bearing account for at least four months), (ii) the Total Administration Expense is $115,709, (iii) the total amount of Service Payments is $17,500, (iv) the total Fee and Expense Award is $1,670,000 ($1,650,000 in fees plus an estimated $20,000 in litigation expenses), and (v) the total number of Merchant Overdraft Fees incurred by the Settlement Class is 179,496, then the Per Merchant Overdraft Fee Amount will equal $17.53 [calculated as

follows: ($4,950,000 + $1,000 – ($115,709 + $17,500 + 1,670,000)) / 179,496]. Thus, under this example, a Settlement Class Member who was charged 1 Merchant Overdraft Fee will have a Settlement Share that equals $17.53, a Settlement Class Member who was charged 2 Merchant Overdraft Fees will have a Settlement Share of $35.06, and so on (with no limit to the number of Merchant Overdraft Fees recoverable by a Settlement Class Member).

Each Settlement Class Member's Settlement Share will be distributed automatically as follows: (i) for those who still have the Bank of America account that was charged the overdraft fee open (as of the Effective Date), by a credit to that deposit account (*Id.* ¶ 96); and (ii) for those with closed Bank of America accounts, by check *via* U.S. Mail to their current addresses. (*Id.* ¶ 97.) Any residual of the Settlement Fund ("Residual") will be redistributed to (i) Settlement Class Members who have open accounts, and (ii) Settlement Class Members whose accounts are closed and who cashed their previous checks. (*Id.* ¶ 99.) In the event the total Residual amount reaches a level at which each Settlement Class Member would receive less than $1 for a Per Merchant Overdraft Fee in a subsequent distribution, then at that point the Residual Funds balance will be paid to the Center for Responsible Lending ("CRL"), a non-profit organization whose purpose coincides, or at least overlaps, with the interests of the Settlement Class that this litigation aims to advance. (*Id.* ¶ 101.)

**C.      Releases**

Pursuant to the Settlement Agreement, upon Final Approval, Plaintiffs and Settlement Class Members will release Bank of America and the Merchants from any claim that: (a) was or could have been asserted in the Complaint; and (b) arises out of, relates to, or is in connection with Defendants' assessment of overdraft fees on one-time, non-recurring debit card transactions with any of the Merchants; or (c) arises out of or relates to the administration of the Settlement. (SA ¶ 111.) The Released Claims do not include any Claims that arise out of the assessment of an overdraft fee by Defendants as a result of any transaction other than a non-recurring debit card transaction with any of the Merchants at issue in this Action. (*Id.* ¶¶ 111-113.) Further, the Release only applies to the persons identified on the Settlement Class Member List, and excludes

all members of the Settlement Class who timely and properly exclude themselves from the Settlement.  (SA ¶¶ 51, 111.)

**D.    Notice Plan**

As set forth in greater detail in the Settlement Agreement, within 35 days after entry of the Preliminary Approval Order, the Settlement Administrator will mail a copy of the full Class Notice (*see* SA, Ex. A) to each potential Settlement Class Member.  (*Id.* ¶ 76.)  Within 14 days after the entry of the Preliminary Approval Order, Defense Counsel will provide KCC with the Settlement Class Member List, which will identify the names and last known address for each potential Settlement Class Member and the number of Merchant Overdraft Fees that each of them incurred during the Class Period.  (*Id.* ¶¶ 72-73.)  KCC will utilize current USPS software and/or the National Change of Address ("NCOA") database searches to update the addresses of Settlement Class Members appearing on the Settlement Class Member List, to ensure that Class Notices are mailed to the most up-to-date addresses for Settlement Class Members.  (*Id.* ¶ 74.)  Any undeliverable addresses will be subject to standard skip tracing. (*Id.* ¶ 81.)

In addition, the Settlement Administrator will establish an Internet website, www.overdraftsettlement.com (the "Settlement Website").  (*Id.* ¶ 77.)  The Settlement Website will provide relevant dates and deadlines pertaining to the Settlement, and will make the Class Notice and all other important case documents available for review and download.  (*Id.*)  The Website also will provide Settlement Class Members with the ability to submit an on-line request to opt out of the Settlement.  (*Id.*)  Finally, the Settlement Administrator will establish a toll-free telephone number for Settlement Class Members to call to obtain information about the Settlement and request a mailed copy of the Class Notice.  (*Id.* ¶ 78.)

**E.    Opt-Out Rights**

Settlement Class Members who wish to be excluded from the Settlement and not be bound by the Settlement Agreement or release must (before the Opt-Out and Objection Deadline, which is 75 days after the issuance of the Preliminary Approval Order) either: (i) sign and mail a notice of intention to opt out to the Settlement to the Settlement Administrator; or (ii) complete

and electronically submit the opt-out form available on the Website.  (*Id.* ¶ 84.)  The finally-approved Settlement Class will not include any persons who send timely and valid opt-out statements; thus, persons who opt out will not be entitled to any benefit under the Settlement and will not release their claims.  (*Id.*)

### F.      Objections to the Settlement

Any Settlement Class Member who does not opt out of the Settlement may object to any aspect of the Settlement and appear at the Final Approval Hearing.  To do so, the Settlement Class Member must first submit and serve a written objection by the Opt-Out and Objection Deadline.  (*Id.* ¶ 85.)  An objector who intends to appear at the Final Approval Hearing must submit and serve a Notice of Intention to Appear.  (*Id.*)  Settlement Class Members who do not properly file a timely, written objection shall be deemed to have waived all objections.  (*Id.*)  Regardless, any Settlement Class Member may attend the final hearing and request to address the Court.  (*Id.* ¶ 87.)

### G.      Attorneys' Fees and Expenses and Service Payments

At least twenty-one (21) days prior to the Opt-Out and Objection Deadline, Class Counsel may file an application for a Fee and Expense Award (not to exceed 33% of the Settlement Fund, *i.e.*, $1,650,000, plus reasonable out-of-pocket litigation costs, estimated at approximately $20,000) and for Service Payments to Class Representatives (not to exceed $2,500 each), all to be paid from the Settlement Fund.  (*Id.* ¶¶ 103-104.)  The amounts of the Service Payments and Fee and Expense Award to be requested by Plaintiffs will be disclosed to Settlement Class Members in the Class Notice.  Any application for a Fee and Expense Award and Service Payments will also be promptly made available on the Settlement Website for Settlement Class Members to review.  (*Id.* ¶ 77.)  The Parties did not discuss any aspect of the attorneys' fees and expenses to be sought by Class Counsel until after reaching an agreement upon the relief provided to the Settlement Class under the Settlement, nor is the Settlement in any way contingent on such awards.  (*Id.* ¶ 109.)

## IV.    THE CLASS ACTION SETTLEMENT APPROVAL PROCESS

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court."  *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  In exercising its discretion, a court must be mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977));[3] *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

The approval process for a proposed class action settlement has three steps:

> (1) Preliminary approval of the proposed settlement;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

David F. Herr, *Manual for Complex Litigation* (4th ed. 2004) § 21.63. This procedure safeguards the due process rights of unnamed Settlement Class Members and enables the Court to fulfill its role as the guardian of the Settlement Class's interests.  *See* 4 Newberg § 11.25.  Plaintiffs are

---

[3]    *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (Eleventh Circuit adopting as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981).

presently at the first step of this three-step process.[4]

## V. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AND PROVISIONALLY CERTIFY THE SETTLEMENT CLASS

The proposed Settlement was negotiated at arm's length by competent, experienced counsel and provides substantial monetary and non-monetary relief to Settlement Class members, in a prompt and efficient manner. Accordingly, as set forth in the proposed Preliminary Approval Order accompanying this motion, the Court should (A) preliminarily approve the Settlement, (B) provisionally certify the Settlement Class, (C) appoint Plaintiffs as Class Representatives and their counsel as Class Counsel, (D) approve the Settlement Class Notice and Settlement Share distribution program, and (E) schedule the Final Approval Hearing.

### A. The Settlement Should be Preliminarily Approved

Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2). At the preliminary approval stage, the district court need only assess whether the proposed settlement falls within the range of possible approval, in order to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *See* 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (noting that the relevant inquiry at preliminary approval is to determine whether the settlement falls within the "range of reasonableness"). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (citations omitted).

In determining whether a settlement is ultimately fair, adequate and reasonable, district courts of the Eleventh Circuit consider six factors: "(1) the likelihood of success at trial; (2) the

---

[4]     While the Court need not hold a hearing prior to granting preliminary approval of the Settlement and authorizing the dissemination of notice to the Settlement Class, *see Manual for Complex Litigation (Fourth)* § 13.14 (stating that a formal hearing is not required at the preliminary approval stage, and the court may grant the parties' motion upon an informal request by the settling parties), the Parties are of course available to attend such a hearing should the Court find that one is appropriate.

range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. Courts engage in a "preliminary evaluation" of these factors to determine whether the settlement falls within the range of reason at the preliminary approval stage. *See*, *e.g.*, *Smith*, 2010 WL 2401149 at *2.

In this case, each factor weighs in favor of finding the Settlement fair, reasonable, and adequate, warranting its preliminary approval.

### 1. Continued Litigation Posed Substantial Risks of Non-Recovery to the Settlement Class

The first *Bennett* factor is the likelihood of success at trial. *See Bennett*, 737 F.2d at 986.

Although Plaintiffs and their counsel continue to believe that the claims alleged in this Action have substantial merit – both individually and class-wide – continued litigation would nonetheless have posed substantial risks of total nonrecovery to the Settlement Class. *See, e.g., Smith v. CRST Van Expedited, Inc.*, No. 10-cv-1116, 2013 WL 163293, at *3 (S.D. Cal. Jan. 14, 2013) (granting preliminary approval of proposed class action settlement where the settlement "avoids the risks of extreme results on either end, *i.e.*, complete or no recovery," explaining that is "plainly reasonable" for class counsel to conclude that "the actual recovery realized and risks avoided" with the settlement "outweigh the opportunity to pursue potentially more favorable results through full adjudication").

For instance, in the course of the Parties' settlement negotiations as well as in Bank of America's Answer to the Complaint, Bank of America raised a number of defenses to Plaintiffs' claims, including but not limited to: (1) the Complaint fails to state a claim for breach of contract on the grounds that the Deposit Agreement authorized the assessment of overdraft fees where one-time debit card transactions were classified as "recurring" by Merchants (*see* ECF No. 10 (Answer) at 13, 15 (affirmative defenses one, two, fifteen, eighteen, and nineteen)); (2) Plaintiffs failed to satisfy all "conditions precedent" to filing suit, including by not notifying Bank of

America of the improperly-assessed overdraft fees at issue within the period of time set forth in both the "Reporting Problems" section of the Deposit Agreement and the Electronic Fund Transfer Act (*see id.* (affirmative defense seven)); (3) the claims alleged in the Complaint are preempted by the National Banking Act, 12 U.S.C. § 21, *et seq.* (*see id.* at 14 (affirmative defense ten)); and (4) Plaintiffs' claims are barred by the applicable statute of limitations (*see id.* at 14 (affirmative defense twelve)). If Bank of America were to prevail on any one of the foregoing defenses, the case would be over and Plaintiffs and the Settlement Class Members would be entitled to no relief.

Additionally, Bank of America indicated that it would have vigorously contested certification of the proposed Settlement Class pursuant to Rule 23 had this litigation proceeded. (*See* ECF No. 10 (Answer) at 10-11 (denials to each of the class allegations of the Complaint).) Practically speaking, a denial of class certification, like a loss on the merits, would effectively extinguish any hope of recovery by the Settlement Class. Finally, even if Plaintiffs were to win class certification, there would remain a risk of losing a jury trial. And even if Plaintiffs prevailed at trial, any judgment or order granting class certification could be reversed on appeal and, even if they were not, the appellate process would likely delay any recovery to the Settlement Class for years.

Under the circumstances, Class Counsel reasonably determined that the substantial benefits provided by the Settlement, as discussed in detail below, far outweigh the risks that continued litigation would have posed. Accordingly, this factor weighs in favor of finding the Settlement fair, reasonable, and adequate. *See Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of class action settlement).

> ## 2. The Settlement Recovers Approximately 79% of the Settlement Class's Total Damages, Placing it Well Within the Range of Reasonableness

The second and third factors consider the range of possible recovery and the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable. *See*

*Bennett*, 737 F.2d at 986.

In evaluating "the terms of the compromise in relation to the likely benefits of a successful trial, . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988). Indeed, as courts of this District have explained, "a settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.*

The total, aggregate value of the fees collected by Bank of America at issue in this case is $6,282,360, and the amount recovered by the Settlement is $4,950,000. Thus, if the Settlement is approved, the Settlement Class will recover approximately 79% of the total value of the fees collected by Bank of America as a result of the overdrafts at issue. After deducting all Settlement-related fees and expenses from the Settlement Fund, each of the 73,235 Settlement Class Members will receive approximately $17.53 for <u>each</u> Merchant Overdraft Fee he or she incurred. Far from the "fraction of the potential recovery" so often obtained for consumers in class action settlements (most of which are nonetheless routinely approved), *see Behrens*, 118 F.R.D. at 542, the $4.95 million Settlement in this case represents <u>a substantial majority</u> of the Settlement Class's potentially recoverable damages. By any reasonable measure, this is an outstanding result for the Settlement Class.

Because the amount recovered in the Settlement falls on the very high end of "the range of possible recovery at which a settlement is fair, adequate and reasonable," *see Bennett*, 737 F.2d at 986, the second and third *Bennett* factors weigh strongly in favor of granting preliminary approval.

### 3. Continued Litigation Would be Complex, Costly, and Very Lengthy

The fourth *Bennett* factor is "the complexity, expense and duration of litigation." *Bennett*, 737 F.2d at 986. In assessing this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise of the

mere possibility of relief in the future, after protracted and extensive litigation.'" *Borcea v. Carnival Corp.,* 238 F.R.D. 664, 674 (S.D. Fla. 2006 (citation omitted).

This would be lengthy and very expensive litigation if it were to continue, involving extensive motion practice, including, inter alia, a motion for class certification (and possibly a motion for decertification), motions for summary judgment and various pretrial motions, as well as the retention of experts, preparation of expert reports, and conducting expert depositions. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well-deserved reputation as being most complex."). The case would probably not go to trial for over a year. And even if the Settlement Class recovered a judgment at trial in excess of the $4.95 million provided by the Settlement, post-trial motions and the appellate process would likely deprive each of the 73,235 Settlement Class Members of any recovery for years, and possibly forever in the event of a reversal.

Rather than embarking on years of protracted and uncertain litigation, Plaintiffs and their counsel negotiated a Settlement that provides immediate, certain, and *meaningful* relief to all Settlement Class members. Accordingly, this factor also weighs in favor of finding the Settlement fair, reasonable and adequate. *See Bennett*, 737 F.2d at 986; *see also Lipuma*, 406 F. Supp. 2d at 1322 (explaining that preliminary approval is favored where settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation); *Borcea*, 238 F.R.D. at 674 (noting that "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush").

### 4. Proposed Class Counsel Strongly Endorse the Settlement

The fifth *Bennett* factor is "the substance and amount of opposition to the settlement." *Bennett*, 737 F.2d at 986.

Because Plaintiffs are presently at the preliminary approval stage, notice has not yet been distributed to the Settlement Class, the period for objecting has not yet commenced, and accordingly there is no opposition to (or Settlement Class support for) the Settlement at this time. Nonetheless, at this stage of the proceedings courts may examine the opinion of competent

counsel in assessing whether a proposed settlement is fair, reasonable, and adequate under this factor. *Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982). In assessing the qualifications of counsel, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.*

Plaintiff's counsel and proposed Class Counsel, Frank S. Hedin of Hedin Hall LLP and Robert Ahdoot of Ahdoot & Wolfson, P.C., have extensive experience prosecuting complex consumer class actions in this district and throughout the country. (*See* Hedin Decl. ¶¶ 2-11 & Ex. 2; Ahdoot Decl. ¶¶ 20-29 & Ex. 1.) Moreover, Messrs. Hedin and Ahdoot previously served as class counsel in a matter over which this Court presided. *Chimeno-Buzzi, et al. v. Hollister, Co.*, No. 14-cv-23120-MGC (S.D. Fla.) ($10 million class settlement finally approved on behalf of 3.7 million settlement class members). Class Counsel strongly endorse the Settlement, which they negotiated at arms' length before an experienced mediator. (*See* Hedin Decl. ¶¶ 28-29; Ahdoot Decl. ¶¶ 30-31.)

Accordingly, this factor also weighs in favor of finding the Settlement fair, reasonable and adequate. *See, e.g., Smith v. CRST Van Expedited, Inc.*, No. 10-cv-1116, 2013 WL 163293, at *3 (S.D. Cal. Jan. 14, 2013) (given their "experience and understanding of the strengths and weaknesses of cases such as this, class counsel's endorsement weighs in favor of final approval"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.") (citation omitted).

### 5. The Settlement is the Product of a Thorough Pre-Filing Investigation, Efficiently-Prosecuted Litigation, and Arms'-Length Negotiations

The sixth and final *Bennett* factor is "the stage of the proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. In assessing this factor, courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement

against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.  A class action settlement should be approved so long as a district court find that "the settlement is fair, adequate, and reasonable and is not the product of collusion between the parties." *Cotton*, 559 F.2d at 1330.

The Settlement, and the efficiency with which it was achieved, is the result of an extensive and wide-ranging investigation concerning every aspect of the case.  For several months prior to commencing this Action, Class Counsel carefully analyzed the underlying facts, including by interviewing numerous Bank of America account holders regarding their experiences being assessed overdraft fees triggered by transactions with the Merchants in question, meticulously reviewing thousands of pages of Plaintiffs' and other account holders' checking account statements, and thoroughly analyzing Bank of America's Deposit Agreement and the other contractual documents governing the relationship between Bank of America and its account holders, during the time period at issue.  Class Counsel investigated the underlying nature of the Merchants' transactions on a historical basis, to confirm that they were not set to occur automatically at preset intervals of time and to thus ensure the viability of Plaintiffs' claims for the duration of the Class period.  Class Counsel performed extensive legal research and analysis concerning both the merits of Plaintiffs' claims and the likelihood of certifying the Settlement Class on a contested basis, a process which ultimately resulted in counsel formulating the theory of liability articulated in the Complaint.  During the litigation, Plaintiffs' counsel obtained and analyzed voluminous sets of documents and electronically-stored data produced by Bank of America.

Armed with this information, Plaintiffs and their counsel had "a clear view of the strengths and weaknesses" of the case and were in a strong position to negotiate a fair, reasonable, and adequate settlement on behalf of the Settlement Class, at mediation and beyond. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986).

Settlement negotiations were extensive and hard-fought, involving months of negotiations and two days of in-person mediations in Los Angeles under the supervision of a

retired United States Magistrate Judge and JAMS mediator. The principal terms of the proposed Settlement were finally reached after further post-mediation arms'-length negotiations between the Parties and their counsel, who have considerable experience litigating class action matters. (*See, e.g.,* Hedin Decl. ¶¶ 18-24; Ahdoot Decl. ¶¶ 10-16.) Prior to executing the formal Settlement Agreement, proposed Class Counsel verified the underlying facts relevant to this matter, including the total damages to Settlement Class Members attributable to the overdraft fees in question. (Hedin Decl. ¶¶ 21-22; Ahdoot Decl. ¶¶ 13-14.)

Where, as here, the proposed settlement is the product of arm's length negotiations between experienced counsel after significant discovery has occurred, the Court may presume the settlement to be fair, reasonable, and adequate. *See Lipuma*, 406 F. Supp. 2d at 1318-19 (approval of class settlement is warranted where "the benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel"); *Rodriguez v. W. Publishing*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."); 4 *Newberg* § 11.41 (presumption of fairness exists where a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced"); *see also, e.g., Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

Accordingly, the stage of the proceedings at which the Settlement was achieved also weighs in favor of preliminary approval. *See Bennett*, 737 F.2d at 986.

**B.** **The Settlement Class Should Be Provisionally Certified for Settlement Purposes**

The Court must next find that the proposed Settlement Class is appropriate for provisional certification pursuant to Rule 23(a) and that it fits into one of the three subsections of Rule 23(b). *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 621 (1997); *see also Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 313 (S.D. Fla. 2001); *Manual for Complex Litigation*, *supra*, § 21.632. Provisional certification will allow the Settlement Class to receive notice of the Settlement and its terms, to be heard on the Settlement's fairness at the Fairness Hearing, and to opt out of or object to the Settlement. *Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *3.

For the reasons below, the Court should provisionally certify the Settlement Class pursuant to Rule 23(a) and Rule 23(b)(3).

### 1. The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) requires that (1) the proposed Settlement Class is so numerous that joinder of all of its individual members is impracticable (numerosity); (2) there are questions of law or fact common to the proposed Settlement Class members (commonality); (3) Plaintiffs' claims are typical of those of the Settlement Class members (typicality), and (4) Plaintiffs and proposed Class Counsel will adequately protect the interests of the Settlement Class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4). The Settlement Class readily satisfies each of these requirements.

#### a. Numerosity

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Bank of America's records reflect that the Settlement Class consists of approximately 73,235 accounts held by individuals that are dispersed throughout the United States. Joinder of all Settlement Class Members is obviously impractical. *See, e.g., Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area")

Accordingly, the numerosity requirement of Rule 23(a) is satisfied.

#### b. Commonality

The second requirement of Rule 23(a) is that "there are questions of law or fact common

to the class." Fed. R. Civ. P. 23(a)(2). The "threshold of commonality is not high." *Campos v. INS*, 188 F.R.D. 656, 659 (S.D. Fla. 1999) (citation omitted). "Plaintiffs' legal claims need not be completely identical to every Class Member." *Brown v. SCI Funeral Servs. of Fla., Inc.,* 212 F.R.D. 602, 604 (S.D. Fla. 2003) (citation omitted). "[F]actual differences concerning treatment [by Defendants] or damages will not defeat a finding of commonality." *Id.* Moreover, Rule 23(a)(2) "does not require that all of the questions of law and/or fact be common to all the plaintiffs." *Campos*, 188 F.R.D. at 660. "[C]ourts in the Eleventh Circuit have held that 'a single common question is sufficient to satisfy Rule 23(a)(2).'" *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 685 (S.D. Fla. 2004) (citation omitted).

Many questions of law and fact are common across the Settlement Class in this case, including whether Bank of America's Deposit Agreement – which governed the contractual relationship between Bank of America and all of its personal checking account holders – permitted the assessment of overdraft fees on "one-time," "non-recurring" debit card transactions, including those with the Merchants in question in this case. Accordingly, whether or not Bank of America breached a contractual obligation when it assessed overdraft fees as a result of such transactions is a question capable of resolution for all Settlement Class Members in one stroke and with common proof.

Accordingly, the commonality requirement of Rule 23(a) is satisfied.

### c. Typicality

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement, like the commonality requirement, is not demanding. *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).

Plaintiffs' claims are typical of the claims of Settlement Class Members because their claims arise out of the same event, practice or course of conduct that gives rise to the claims of the other Settlement Class Members and are based on the same legal theory. Plaintiffs, like all Settlement Class Members, were each subject to the same, uniform contract with Bank of

America, and were each assessed one or more overdraft fee as a result of a debit card transaction with a Merchant that was not set up automatically to occur at a pre-set interval of time. Plaintiffs all bring the same claim for breach of contract, on behalf of themselves and all Settlement Class Members, and they all seek to recover the same amount of damages for each allegedly improper overdraft fee on behalf of themselves and all Settlement Class Members. Thus, the same factual and legal basis underlying Plaintiffs' claims also serves as the basis for the claims of all potential Settlement Class Members. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory").

Accordingly, the typicality requirement of Rule 23(a) is satisfied.

### d. Adequacy

The fourth and final requirement of Rule 23(a) is "adequacy of representation," Fed. R. Civ. P. 23(a)(4), which has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class"; and (2) "the representatives' counsel must be qualified, experienced, and generally able to conduct the proposed litigation." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (citation omitted).

Both components are satisfied because Plaintiffs' interests in this litigation are aligned with, and not antagonistic to, those of the Settlement Class, and because Plaintiffs hired and are represented by qualified and competent counsel. Plaintiffs challenge the same allegedly unlawful conduct that each Settlement Class member challenges, and seek the same monetary relief that is sought by each Settlement Class member. Plaintiffs have retained competent counsel, provided substantial assistance to their counsel in advance of and during the litigation, vigorously prosecuted the case on behalf of the Settlement Class, and assisted their counsel in reaching a proposed resolution to this action on behalf of the Settlement Class. *See Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (noting that the determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the

class"). Finally, Plaintiffs' counsel and proposed Class Counsel have substantial experience prosecuting consumer class actions and, in particular, class actions concerning banking and other financial services. (*See* Hedin Decl. ¶¶ 7-8; Ahdoot Decl. ¶¶ 22, 28.)

Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

## 2. The Requirements of Rule 23(b)(3) Are Satisfied

Next, because Plaintiffs seek provisional certification under Rule 23(b)(3), Plaintiffs must additionally show (1) that common questions of law or fact predominate over questions affecting only individual members of the Settlement Class (predominance); and (2) that a class action is superior to other available methods of resolving the controversy (superiority). *See* Fed. R. Civ. P. 23(b)(3).[5] Both requirements are readily satisfied here.

### a. Common Questions Predominate

The predominance requirement of Rule 23(b)(3) is satisfied because common questions comprise a substantial aspect of the case and can be resolved for all Settlement Class Members in a single adjudication. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)[.]'") (citation omitted); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Senw., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010); *In re Tri-State Crematory Litig*., 215 F.R.D. 660, 692 (N.D. Ga. 2003) (noting that predominance "does not require that all issues be common to all parties, rather, it mandates that resolution of the common [liability] questions affect all or substantial number of the class members") (quotation omitted).

Each Settlement Class Member's relationship with Bank of America is governed by the same contract, the Deposit Agreement. *See, e.g., Sacred Heart Health Sys*., 601 F.3d at 1171 ("It

---

[5] Because the Court is called upon to assess the requirements of Rule 23 in the context of a settlement, the Court need not consider whether any manageability problems would arise at trial if the Settlement Class is certified. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

is the form contract, executed under like conditions by all class members, that best facilitates class treatment."). Thus, to resolve each of the Settlement Class Members' claims, the central common question is whether Bank of America breached its uniformly-imposed Deposit Agreement by assessing overdraft fees as a result of debit card transactions with Merchants that were not set up to occur automatically at pre-set intervals of time.

Accordingly, the predominance requirement of Rule 23(b)(3) is satisfied.

### b. Class Treatment of the Settlement Class's Claims is Superior to any Alternative Method

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. In analyzing this factor, courts "consider whether the class members would be aware of their rights" absent class certification, as well as "the improbability that large numbers of class members would possess the initiative to litigate individually." *Fabricant*, 202 F.R.D. at 318 (citation omitted); *see also Amchem,* 521 U.S. at 617 (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all"). Class actions are meant to promote "economies of time, effort and expense, assuring uniformity and avoiding repetitive actions." *Id.*

A class action is the superior method for the fair and efficient adjudication of these claims. Plaintiffs' claims are shared by approximately 73,228 other consumers, each of whom incurred at least one overdraft fee as a result of a non-recurring debit card transaction with a Merchant, in breach of the same Deposit Agreement, during the same period of time. Because the amount of each individual Settlement Class Member's claim is small in comparison to the costs of litigation, it is unlikely that any Settlement Class Member would expend the resources to pursue individual litigation absent the Settlement. Moreover, individual litigation would significantly increase the delay and expense to all parties and to the Court, and would create the potential for inconsistent or contradictory rulings. By contrast, the resolution of the claims of all Settlement Class Members in a single proceeding promotes judicial efficiency, avoids

inconsistent decisions, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23").

Accordingly, resolution of the claims alleged in this Action through a settlement class is far superior to a multiplicity of individual lawsuits. *See* Fed. R. Civ. P. 23(b)(3). The Court should certify the Settlement Class.

### C.    The Court Should Appoint Plaintiffs' Counsel as Class Counsel

Upon certifying a class, Rule 23 requires that a court appoint class counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4). In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the case; (3) counsel's knowledge of the applicable law, and (4) the resources class counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv); *Cabiness v. Educational Fin. Solutions, LLC*, No. 16-cv-1109-JST, 2018 WL 3108991, at*4 (N.D. Cal. June 25, 2018).

In this case, proposed Class Counsel at Hedin Hall LLP and Ahdoot & Wolfson, P.C., readily satisfy the criteria of Rule 23(g).  (*See generally* Hedin Decl.; Ahdoot Decl.)  First, Plaintiffs' counsel and proposed Class Counsel have devoted substantial time, effort and resources to this action, beginning with their initial investigation of Plaintiffs' allegations, during the litigation and in formal discovery, and ending with hard-fought settlement negotiations, a lengthy mediation, and confirmatory discovery.  (*Id.*)  Second, Plaintiffs' counsel have extensive experience in complex class action litigation, in district courts of the Eleventh Circuit and elsewhere, and were previously found adequate by this Court to serve as class counsel in a similar consumer class action. *See Chimeno-Buzzi*, No. 14-cv-23120-MGC, ECF No. 129 at 2

(order granting preliminary approval of class action settlement, and appointing F. Hedin and R. Ahdoot class counsel).

Accordingly, the Court should appoint Frank S. Hedin of Hedin Hall LLP and Robert Ahdoot of Ahdoot & Wolfson, P.C. as Class Counsel.

> **D.    The Court Should Approve the Proposed Class Notice, Appoint KCC as Settlement Administrator, and Direct the Settlement Administrator to Provide the Class Notice to the Settlement Class**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Litigation, supra*, at § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).  Moreover, "the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roeback & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted).

In this case, the parties have selected KCC, a reputable and well-respected administrator, to disseminate the Class Notice and distribute the Settlement Shares to Settlement Class Members.  KCC will mail the Class Notice directly to all Settlement Class Members, providing them with all of the information necessary to make informed evaluations of the Settlement, and will then automatically distribute Settlement Shares to all Settlement Class Members who do not exclude themselves, without requiring the filing of claim forms.  The proposed Class Notice and Settlement Share distribution programs comport with due process and readily satisfy the procedural requisites of Rule 23.

Accordingly, as set forth below, the Court should (1) approve the Class Notice and Settlement Share distribution program, and (2) appoint KCC as Settlement Administrator.

### 1.     The Class Notice and Settlement Share Distribution Program Should be Approved

The Class Notice was prepared and formatted consistent in style and approach with the model class notices available on the Federal Judicial Center's ("FJC") website, www.fjc.gov, and readily satisfies the requirements of Rule 23(c)(2)(b).  (Admin Decl. ¶¶ 11, 20-24.)  The Class Notice advises Settlement Members, in concise and plain language, of the essential terms of the Settlement, the plan of allocation, and information regarding Class Counsel's motion for attorneys' fees and expenses.  (SA, Ex. A; *see also* Admin Decl. ¶¶ 12, 20-21.)  The Class Notice also provides the details on the date, time and place of the Final Approval Hearing, other important dates and deadlines, and sets forth the procedures for objecting to the Settlement, and requesting exclusion from the Class.  (SA, Ex. A.)  The information is in a format that is accessible to the reader, and is the same or similar to formats that have been approved by many other courts across the country.  (Admin Decl. ¶¶ 12, 20-21.)

The Settlement Agreement requires Defense Counsel to provide the Settlement Class Member List, containing the names and last known addresses for each Settlement Class Member (and the number of Merchant Overdraft Fees associated with each Settlement Class Member's Consumer Deposit Account), to the Settlement Administrator within fourteen (14) days of the Preliminary Approval Date.  (SA ¶¶ 72-73.)

Within thirty (30) days of the Court's entry of the Preliminary Approval Order, the Settlement Administrator will mail a copy of the long-form Class Notice to each potential Settlement Class Member and will provide a copy of the Class Notice on the Website (*id.* ¶¶ 76-77).  *See* David F. Herr, MANUAL FOR COMPLEX LITIGATION § 21.311 at 487 (4th ed. 2004) ("When the names and addresses of most class members are known, notice by mail is usually preferred.").  Directly mailing the Class Notice to Settlement Class Members (with updating of addresses through the USPS NCOA database, follow up skip tracing and re-mailing,

and finally emailing the Notice) in this manner is the preferred method for providing notice.[6]

(Admin Decl. ¶¶ 12-15.)

Additionally, the Settlement Agreement provides for the Settlement Website and toll-free telephone number, through which Settlement Class Members may obtain information and important documents (including the Class Notice) pertaining to the Action and the Settlement. (SA ¶ 78.) Additionally, Settlement Class Members who wish to opt out of the Settlement may do so on the Website. *(Id. ¶ 77.)*

Pursuant to the Settlement Agreement, Settlement Shares will be distributed automatically to all Settlement Class Members, either *via* direct deposit to their checking accounts (for individuals whose accounts remain open) or by check to their current addresses (for those whose accounts have since closed). *(Id. ¶ 95.)*

The proposed Class Notice program is robust, comprehensive and informative, effectuating the Class Notice directly to all Settlement Class Members; providing additional information to Settlement Class Members *via* the Settlement Website and the automated toll-free Settlement telephone number; offering the ability to opt out of the Settlement on the Website; and automatically distributing Settlement Shares to the checking accounts of Settlement Class Members. Accordingly, Plaintiffs respectfully request that the Court find, pursuant to Rule 23(c)(2)(b), that the notice provided by the Settlement Class Notice program: (i) is the best practicable notice; (ii) is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action and of their right to object to or to exclude

---

[6]    See *Peters*, 966 F.2d at 1486 ("[N]otice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.'"); *UAW v. General Motors Corp*., No. 05-cv-73991, 2006 WL 891151, at *34 (E.D. Mich. Mar. 31, 2006); *Johnson v. GMAC Mortgage Group, Inc*., No. 04-cv-2004, 2006 WL 2433474, at *4 (N.D. Iowa Aug. 21, 2006) (first class mail to class members' last known addresses satisfies notice requirement*); In re VMS Ltd. Partnership Securities Litigation*, No. 90-cv-2412, 1995 WL 355722, at *1 (N.D. Ill. June 12, 1995) (same); *Touhey v. U.S*., No. 08-cv-1418, 2011 WL 3179036, at *11 (C.D. Cal. July 25, 2011) (finding mail, publication, website and toll-free number sufficiently calculated to reach class members and satisfied Rule 23 notice requirements); *In re M3 Power Razor System Marketing & Sales Practice Litigation*, 270 F.R.D. 45, 63 (D. Mass. 2010) (determining notice with 80 percent reach to inform consumers of their rights as class members warranted preliminary approval).

themselves from the proposed Settlement; (iii) is reasonable and constitutes due, adequate and sufficient notice to all Persons entitled to receive notice; and (iv) meets all requirements of applicable law. *See, e.g., Touhey v. U.S.*, No. 08-cv-1418, 2011 WL 3179036, at \*11 (C.D. Cal. July 25, 2011) (finding mail, publication, website and toll-free number were sufficiently calculated to reach class members, and satisfied Rule 23 notice requirements).

### 2. The Court Should Appoint KCC as the Settlement Administrator and Direct the Settlement Administrator to Disseminate the Class Notice

Finally, Plaintiffs respectfully request that the Court appoint KCC as the Settlement Administrator, direct the Settlement Administrator to disseminate the Class Notice in accordance with the Settlement Class Notice program, and require the Settlement Administrator to file proof of compliance with the Class Notice program no later than seven (7) days before the Final Approval Hearing.[7]

### E. The Court Should Schedule the Final Approval Hearing

The last step in the settlement approval process, after completion of the Class Notice program, is the Final Approval Hearing, where the Court will consider the fairness, reasonableness and adequacy of the Settlement and whether it should be finally approved, as well as to determine the reasonableness of the requested Attorneys' Fee Award and Service Payments. Plaintiffs respectfully request that the Court set a date for the Final Hearing at the Court's convenience, more than 100 days after this Motion is filed, consistent with the timetable set forth in the proposed Preliminary Approval Order accompanying this Motion.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court, as set forth in the proposed Preliminary Approval Order attached hereto: (1) preliminarily approve the Settlement and provisionally certify the Settlement Class; (2) appoint Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel; (3) approve the Class Notice, appoint KCC as Settlement

---

[7]    Promptly after the filing of this Motion and the attached Settlement Agreement, Bank of America will serve or cause the Class Administrator to serve CAFA Notice in full compliance with 28 U.S.C. § 1715. (SA ¶ 69.)

Administrator, and order the Settlement Administrator to disseminate the Class Notice; (4) establish a procedure and timetable, consistent with the procedure set forth in the Settlement Agreement and the proposed Preliminary Approval Order attached hereto, for Settlement Class members to object and exclude themselves from the Settlement, for Plaintiffs to move for final approval of the Settlement, and for Plaintiffs and their counsel to move for an Attorneys' Fee Award and Service Payments; and (5) schedule a Final Approval Hearing to consider whether to finally approve the Settlement.

Dated: June 7, 2019

Respectfully submitted,

By: /s/ Frank S. Hedin

**HEDIN HALL LLP**
Frank S. Hedin (FBN 109698)
fhedin@hedinhall.com
1395 Brickell Ave, Suite 900
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801

**AHDOOT & WOLFSON, PC**
Robert Ahdoot (*pro hac vice*)
rahdoot@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111
Fax: (310) 474-8585

*Counsel for Plaintiffs and*
*Proposed Class Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 7, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ Frank S. Hedin

**HEDIN HALL LLP**
Frank S. Hedin
1395 Brickell Avenue, Suite 900
Miami, Florida 33131
Email: fhedin@hedinhall.com
Telephone: (305) 357-2107
Facsimile: (305) 200-8801