| | |
|---|---|
| KENNETH D. OWENS; SAMANTHA A. HOLLEY; KARA L. GARIGLIO; NICOLETTA PANTELYAT; ISABELLE SCHERER; JONATHAN TULE; and KELSEA D. WIGGINS, on behalf of themselves and all others similarly situated, | Hon. Marcia G. Cooke, Presiding Hon. Magistrate Jonathan Goodman |
| Plaintiffs, | |
| v. | |
| BANK OF AMERICA, N.A.; and BANK OF AMERICA CORPORATION, | |
| Defendants. | |

**CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**[1]

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Class Representatives Kenneth D. Owens, Samantha A. Holley, Kara L. Gariglio, Nicoletta Pantelyat, Isabelle Scherer, Jonathan Tule, and Kelsea D. Wiggins ("Class Representatives" or "Plaintiffs"), on behalf of themselves and the proposed Settlement Class, respectfully move on an unopposed basis for final approval of the Settlement with Defendants Bank of America, N.A. and Bank of America Corporation (collectively, "Bank of America" or "Defendants"), and in support thereof state as follows:

## I.    INTRODUCTION

The Settlement negotiated by the Class Representatives and Class Counsel in this novel and complex litigation is an exemplary result for Settlement Class Members. The Settlement establishes a non-reversionary Settlement Fund for the benefit of the Settlement Class (the "Class") in the amount of $4.95 million, which represents approximately 79% of the total sum of overdraft fees collected by Bank of America as a result of the overdrafts at issue in this case. Upon final approval of the Settlement, cash awards will be automatically distributed directly to Settlement

---

[1] Unless otherwise defined herein, all capitalized terms have the same force, meaning, and effect as ascribed in the "Definitions" section of the Settlement Agreement. ECF No. 27-1, ("Settlement" or "SA") ¶¶ 1-57.

Class Members, in amounts commensurate with the number of overdraft fees assessed to each of the Settlement Class Members (ranging from $17.50 to $1,977.45, with an average cash award of $42.90). On a percentage-of-total-damages basis, this Settlement represents one of the best recoveries – if not the best recovery – ever achieved for a group of consumers in an overdraft fee class action.

The Court preliminarily approved the Settlement on September 16, 2019. In granting preliminary approval, the Court found that the terms of the Settlement were "fair, reasonable, and adequate" and that the Class should be given notice. ECF No. 30, ("Preliminary Approval Order") ¶¶ 6, 9. The robust, Court-approved Notice Plan was implemented and the period for filing objections or exclusions passed on December 20, 2019. The response from Settlement Class Members ("Class Members") has been overwhelmingly positive: only sixteen (16) Class Members opted out of the Settlement and not a single Class Member filed an objection.

Given the significant value provided to all Class Members under the Settlement, the numerous substantial risks of non-recovery to the Settlement Class that continued litigation would have posed, and for the reasons set forth herein and in the concurrently-filed Declarations of Frank S. Hedin ("Hedin Decl."), Robert R. Ahdoot ("Ahdoot Decl."), Alyssa A. Sussman ("Sussman Decl."), and Carla A. Peak Re: Notice Procedures ("Peak Decl."), Class Representatives respectfully request that the Court: (1) certify the Settlement Class under Rules 23(b)(3) and 23(e) for settlement purposes; (2) approve the Settlement as fair, reasonable, and adequate; and (3) enter the Parties' proposed Final Approval Order and Judgment, filed herewith.

## II.    BACKGROUND

### A.    History of the Litigation[2]

In this Action, Plaintiffs allege that Bank of America improperly assessed overdraft fees to its personal deposit account holders as a result of "onetime," "non-recurring" debit card transactions made with the Merchants Lyft, Grubhub, Gett, Eatstreet, Eat24, PicMonkey, Favor, AMI, Postmates, Seamless, and Doordash. ECF No. 1, Class Action Complaint ("Complaint"). Plaintiffs allege that Bank of America, in its Deposit Agreement with account holders, promised

---

[2]    The facts and procedural history of the litigation were set forth in the briefing related to preliminary approval and those in support of the request for Service Payments and for the Fee and Expense Award. ECF No. 26 at 4-7; ECF No. 31 at 3-7. As detailed therein, bringing this case to a successful resolution demanded a significant commitment of time and work by Class Counsel, all of which resulted in the Settlement. *Id.*; Hedin Decl. ¶¶ 28, 35; Ahdoot Decl. ¶ 32.

that it would "not authorize overdrafts for everyday non-recurring debit card transactions and ATM transactions" and would "not charge … an Overdraft Item fee on an everyday non-recurring debit card transaction." *Id.* ¶ 2. The Deposit Agreement distinguished between "non-recurring" and "recurring" debit card transactions follows: (i) "non-recurring" debit card transactions (which are not subject to overdraft fees) are "usually purchases made with your debit card or debit card number on a one-time or day-to-day basis [such as] groceries, gas, or coffee in the morning;" and (ii) "recurring" debit card transactions (which are subject to overdraft fees) as "transactions that …[are] set up to occur automatically, such as automatic bill payments." *Id.* ¶ 19. Despite these express contractual provisions, Bank of America charged $35 overdraft fees on numerous types of non-recurring debit card transactions – including those from the Merchants. *Id.* ¶ 4.

The Settlement is the product of a thorough investigation and evaluation of the relevant facts and law giving rise to Plaintiffs' claims, and a carefully-formulated litigation strategy aimed at obtaining meaningful relief for the Class as efficiently as possible.[3] Class Counsel's investigation included, *inter alia,* interviewing dozens of Bank of America deposit account holders, analyzing hundreds of account holders' bank statements and overdraft fee notices, thoroughly reviewing various iterations of Bank of America's Deposit Agreement, the contractual document governing debit card account holders' relationships with Bank of America and publicly-accessible social media posts and complaints from consumers, and conducting a detailed investigation into the technology (including publicly-accessible APIs) used by various payment processors involved in the initiation, authorization, coding and classifying of the transactions in question. Hedin Decl. ¶¶ 11-14; Ahdoot Decl. ¶¶ 5-21.

As a result of Class Counsel's investigation and careful preparation of this case, Plaintiffs were able to efficiently identify and obtain the materials necessary to intelligently assess the risks, uncertainties, burdens, and costs posed by further litigation, as well as the benefits that might be obtained for the Class through early resolution. Hedin Decl. ¶ 35; Ahdoot Decl. ¶ 30.

### B. Settlement Negotiations and Mediation

Following extensive preliminary negotiations, the Parties attended two days of in-person mediation sessions in Los Angeles, California, under the supervision of a retired U.S. Magistrate Judge at JAMS. Hedin Decl. ¶ 17; Ahdoot Decl. ¶ 11. Prior to and during their settlement

---

[3]     *See* Declarations of Frank S. Hedin (ECF No. 31-1) ¶¶ 11-16 and Robert R. Ahdoot (ECF No. 31-2) ¶¶ 4-15 for a full and detailed account of such investigations and litigation efforts.

discussions and mediations, the Parties exchanged documents and data on an arms'-length basis to enable Plaintiffs to adequately evaluate the scope of the potential class-wide liability and thus engage in meaningful settlement discussions on behalf of the Class. Hedin Decl. ¶ 22; Ahdoot Decl. ¶ 16. After extensive arms'-length negotiations, both between and after the two mediations, the Parties agreed on the principal terms of the proposed Settlement. Hedin Decl. ¶ 28; Ahdoot Decl. ¶ 21.

Class Counsel conducted confirmatory discovery to ensure that the terms of the Settlement were based on correct facts. Hedin Decl. ¶¶ 20-21; Ahdoot Decl. ¶¶ 12-16. Class Counsel verified important facts – including the size of the Class, the total fees incurred by the Class, the total number of overdrafts at issue, and the methodology utilized by Bank of America to compute those figures. *Id.* Through these robust discovery efforts, Class Counsel determined that Bank of America collected a total of $6,282,360 in fees as a result of the overdrafts at issue (representing 179,496 separate overdrafts, each incurring a $35 overdraft fee) from 73,235 Class Members. Hedin Decl. ¶ 21; Ahdoot Decl. ¶ 15.

The Parties held a competitive bidding process to procure claims administration estimates from three well-known settlement administration companies, at the conclusion of which the Parties selected KCC, LLC ("KCC") as the proposed Settlement Administrator. Hedin Decl. ¶ 26; Ahdoot Decl. ¶¶ 18-19. The Notice Plan and each document comprising the Class Notice were negotiated and exhaustively refined by Class Counsel, with input from experts at KCC, to ensure that these materials are clear, straightforward, and will be understood by members of the Class. Hedin Decl. ¶ 27; Ahdoot Decl. ¶ 20; Peak Decl. ¶¶ 16, 21-23.

C.    **Summary of Settlement Terms**

1.    **The Settlement Class**

Pursuant to the Settlement Agreement, Class Representatives request that the Court finally certify the following preliminily approved Settlement Class:

> all holders of consumer deposit accounts with Bank of America, N.A. in the United States who were charged (and not refunded or credited) overdraft fees on debit card transactions made with the Merchants that were not a payment for periodic subscription services and were coded (or classified) as "recurring" transactions by the Merchants, at any time between January 1, 2012 and April 6, 2017. Excluded from the Settlement Class are: (a) all persons who are employees, directors, and officers of Bank of America, N.A. and Bank of America Corporation; (b) Class Counsel; and (c) the Judges presiding over this Action and their Court staff.

ECF No. 30, Preliminary Approval Order ¶ 2; *see also* ECF No. 27-1, SA ¶ 47.

### 2. The Settlement Fund and Payments to Class Members

The Settlement requires Bank of America to establish a non-reversionary Settlement Fund, for the benefit of the Class, in the amount of $4.95 million. SA ¶ 89. This amount represents approximately 79% of the total revenues collected by Bank of America from Class Members (approximately $6.28 million) as a result of Merchant Overdraft Fees. On or about September 25, 2019, Bank of America deposited $4.95 million in an Escrow Account established and administered by KCC. Peak Decl. ¶ 19. As of December 31, 2019, the Escrow Account has earned $5,938.37 in interest. *Id*.

Upon the Effective Date, the Settlement Fund will be *automatically* distributed to Class Members who do not exclude themselves, on a per-overdraft fee basis, after first deducting Settlement Administration Expenses, any Service Payments and any Attorneys' Fee and Expense Award approved by the Court. SA ¶¶ 95-96. The Settlement Fund will then be divided by the total number of all Merchant Overdraft Fees paid by Settlement Class Members to yield a "Per Merchant Overdraft Fee Amount." *Id.* Each Class Member's Settlement Share shall equal the "Per Merchant Overdraft Fee Amount" multiplied by the number of Merchant Overdraft Fee(s) paid by and not refunded to that Settlement Class Member. *Id.*

For example, assuming Settlement Administration Expenses are $122,957, and that the Court approves the requested Service Payments of $17,500 total, and the requested Fee and Expense Award of $1,668,829.07, the Per Merchant Overdraft Fee compensation would equal $17.50 based on the total number of Merchant Overdraft Fees charged to Class Members (179,496 - 22 (overdraft fees of opt-outs)). Peak Decl. ¶ 17. Thus, under this example, a Class Member charged for two Merchant Overdraft Fees will receive $$35, *etc*. There is no cap on the amount of any Class Member's recovery under the Settlement.

Class Members need not take any action to receive a payment from the Settlement – rather, Settlement Shares are to be paid *automatically* to all Class Members who do not exclude themselves, as follows: (i) for those with open Bank of America accounts (as of the Effective Date), by a credit to their account, and (ii) for those with closed Bank of America accounts, by check *via* U.S. Mail. SA ¶¶ 96-97. Any residual funds will be redistributed to Class Members whose Settlement checks were cashed and Class Members whose Settlement Payments were directly deposited into their open deposit accounts. *Id.* ¶ 99. In the event residual funds equal less

than $1.00 per Class Member, the remainder of the Settlement Fund will paid to the Center for Responsible Lending (a 26 U.S.C. § 501(c)(3) non-profit organization). *Id.* ¶ 101.

### 3. The Class Release

As detailed in the Settlement Agreement, should the Court grant Final Approval, Class Representatives and Class Members will discharge Bank of America and the Merchants from any claim that: (a) was or could have been asserted in the Complaint; and (b) arises out of, or relates to, or is in connection with Defendants' assessment of overdraft fees on one-time, non-recurring debit card transactions with any of the Merchants; or (c) arises out of or relates to the administration of the Settlement. SA ¶ 111. The Released Claims do not include any Claims that arise out of the assessment of an overdraft fee by Defendants as a result of any transaction other than a non-recurring debit card transaction with any of the Merchants at issue in this Action. *Id.* ¶¶ 111-113. Further, the Release only applies to the persons identified on the Settlement Class Member List, and excludes all members of the Class who timely and properly exclude themselves from the Settlement. *Id.* ¶¶ 51, 111.

### D. Notice Was Provided Pursuant to the Court's Preliminary Approval Order

At preliminary approval, the Court approved the proposed Notice Plan, finding it met the requirements of Rule 23 and due process. ECF No. 30, Preliminary Approval Order ¶¶ 8-9. Pursuant to the Preliminary Approval Order, the Parties implemented the Notice Plan in coordination with the approved Settlement Administrator, KCC. Peak Decl. ¶¶ 4, 6-16. In accordance with the Settlement, Bank of America disseminated notice pursuant to the requirements of Class Action Fairness Act, 28 U.S.C. § 1715, *et seq.* (Sussman Decl. ¶¶ 2-4); and provided KCC with the names and addresses of all potential Class Members, the number of Merchant Overdraft Fees charged to each affected account, and whether the account was open or closed. Sussman Decl. ¶ 5; Peak Decl. ¶ 6.

After KCC accounted for duplicate addresses, updated all addresses on the National Change of Address database maintained by the USPS, KCC mailed 72,856 Class Notices directly to Class Members. Peak Decl. ¶¶ 6-7 & Exhibit ("Ex.") A (exemplar of the mailed Class Notice). Class Notices that were returned undeliverable were re-sent to Class Members' addresses that could be updated through credit bureau and/or other public source databases. *Id.* ¶ 8.

The Class Notices directed Class Members to the Settlement Website www.nonrecurringoverdraftsettlement.com, where they were able to: submit opt-outs; access

pleadings, including the Settlement Agreement, Preliminary Approval Order, and Motion for Service Payments and Attorneys' Fees and Expenses; and see important deadlines and answers to frequently asked questions. *Id.* ¶ 9; *see generally* www.nonrecurringoverdraftsettlement.com (last visited Jan. 7, 2020). In addition, a toll-free telephone number was established to provide Class Members with additional information, answers to FAQs, and to allow them to request that a Class Notice be mailed to them. Peak Decl. ¶ 11. Finally, a post office box and email address were established, to allow Class Members to contact the Settlement Administrator by mail and/or email with any specific requests or questions. *Id.* ¶ 10.

### E. Opt-Outs, Objections, and Administration of the Settlement

The deadline for Class Members to request exclusion from, or object to, the Settlement passed on December 20, 2019. To date, KCC has received 16 valid and timely requests for exclusion from the Class (*via* online submission or mail). *Id.* ¶ 12 & Ex. B (list of timely opt-outs). There were no objections to the Settlement. Peak Decl. ¶ 13.

All Settlement Administration Expenses will be paid from the Settlement Fund. SA ¶¶ 79, 92. To date, KCC has invoiced $122,957. Peak Decl. ¶ 18; SA ¶¶ 79, 92, 131.

### F. Class Representative Service Payments and Class Counsel's Attorneys' Fees and Expenses

On November 29, 2019, 21 days prior to the Opt-Out and Objection Deadline, as required by the Settlement Agreement (SA ¶¶ 103-104) and pursuant to the Preliminary Approval Order, Class Representatives and Class Counsel filed their Unopposed Motion for Service Payments and a Fee and Expense Award (the "Fee Motion") (ECF No. 31). The Fee Motion seeks Service Payments of $2,500 to each of the seven Class Representatives (for a total of $17,500 in Service Payments) in recognition of their important roles in this litigation; and (2) a Fee and Expense Award to Class Counsel of $1,668,829.07, which includes fees of one-third of the Settlement Fund ($1,650,000) and $18,829.07 in out-of-pocket litigation expenses incurred by Class Counsel, all to be paid from the Settlement Fund. In accordance with the Settlement agreement and Preliminary Approval Order, the Fee Motion and supporting declarations were all made immediately available on the Settlement Website. *See e.g.* www.nonrecurringoverdraftsettlement.com/case-documents.aspx (last visited Jan. 7, 2020). The Parties only negotiated the amount of the proposed Service Payments and attorneys' fees after first reaching an agreement upon the relief provided to the Class. SA ¶ 109; Hedin Decl. ¶ 32; Ahdoot Decl. ¶ 28.

## III.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND WARRANTS FINAL APPROVAL

Judicial and public policy favor the voluntary settlement of class litigation.  *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F.Supp. 1051, 1054 (M.D. Fla. 1988) ("settlements are highly favored in the law."); *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1329 (S.D. Fla. 2001) (citation omitted) (the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements.").  Thus "there exists 'an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being [the] most complex.'"  *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (internal citations omitted).  With a settlement, class members are ensured a benefit as opposed to "the mere possibility of recovery at some indefinite time in the future."  *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

A settlement should be approved if it is fair, reasonable, and adequate, and not the product of collusion.  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  In determining whether a settlement is "fair, adequate, and reasonable," the following factors are generally considered:

> (1) the existence of fraud or collusion behind the Settlement; (2) the complexity, expense and duration of litigation; (3) the stage of proceedings at which the Settlement was achieved and the amount of discovery completed; (4) the probability of the Plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of Class Counsel, Class Representatives, and the substance and amount of opposition received.

*Oakes v. Blue Cross & Blue Shield of Fla., Inc.*, 2016 U.S. Dist. LEXIS 147252, at *3 (S.D. Fla. Oct. 21, 2016), citing *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994*).; See also Bennett*, 737 F.2d at 986.

"In assessing these factors, the Court 'should be hesitant to substitute . . . her own judgment for that of counsel.'"  *Lipuma*, 406 F. Supp. 2d at 1315 (quoting *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991)); *Warren*, 693 F.Supp. at 1060 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation.").  "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'"  *Perez v. Asurion Co.*, 501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) (citation omitted).

Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted). That is the case here. This Settlement is the product of hard-fought litigation and arm's-length negotiations. Absent a settlement, the resolution of this litigation through the trial process would likely have entailed many more years of protracted adversary litigation (in various jurisdictions) and appeals, which would have substantially delayed relief to Class Members. Moreover, the Settlement avoids incremental litigation of these claims on an individual basis. Considering the extensive monetary relief provided by the Settlement, the Court should determine that it is fair and reasonable and merits final approval. Here, each factor weighs in favor of granting final approval.

### A.    The Settlement is the Product of Good Faith, Informed, Arms'-Length Negotiations Among Experienced Counsel

The threshold consideration is whether a proposed settlement is the product of fraud or collusion between the parties. In determining whether there was fraud or collusion, the court "examines whether the settlement was achieved in good faith through arm's-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel." *Canupp v. Sheldon*, No. 204-cv-260-FTM,99DNF, 2009 WL 4042928, at *9 (M.D. Fla. 2009) (citing *Bennett*, 737 F.2d at 987, n.9).

Here, no claim of fraud or collusion could be credibly made. The context in which the Settlement was reached confirms that it was the product of arms'-length and informed negotiations between adverse parties. Hedin Decl. ¶¶ 17-22; Ahdoot Decl. ¶¶ 11-16. The Settlement was reached only after, *inter alia*, obtaining extensive discovery from Defendants, independent investigations and interviews of Bank of America employees, retention of knowledgeable and qualified experts, numerous meetings and conferences among experienced counsel, and two days of in-person mediation sessions under the supervision of a retired United States Magistrate Judge and highly-qualified JAMS mediator. Hedin Decl. ¶¶ 11-14, 17-23; Ahdoot Decl. ¶¶ 5-8, 11-16.

"Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV, 2017 WL 9472860, at *4 (S.D. Fla. Nov. 20, 2017) (quoting *Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 692 (S.D. Fla. 2014). In particular, the fact that the Settlement was reached

with the assistance of a neutral mediator with substantial experience mediating class actions demonstrates the absence of collusion. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of … a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Acct. Overdraft Litig.*, 830 F.Supp. 2d at 1345, 1349 (no collusion where settlement reached by capable and experienced counsel with the assistance of a well-qualified, experienced mediator).

In addition, before and during their settlement discussions and mediations, the Parties exchanged documents and data on an arms'-length basis to enable Plaintiffs to adequately assess the strengths and weaknesses of the claims and defenses and to determine the full scope of the damages at issue. Hedin Decl. ¶¶ 18-22; Ahdoot Decl. ¶¶ 13-16. The extensive information provided during discovery and the mediation process not only allowed the Parties to sufficiently understand the nature of their positions, but also laid the groundwork for arms'-length negotiations that ultimately resulted in the Settlement. Hedin Decl. ¶¶ 18-22; Ahdoot Decl. ¶¶ 13-16. That the Settlement was achieved under these circumstances further confirms the absence of fraud or collusion. Accordingly, this factor weigh in favor of final approval.

**B.      This Case Presented Novel and Complex Issues, and Settlement Approval Will Save the Class Years of Costly Litigation in this Court and on Appeal**

The Court also looks to the complexity of the litigation, as well as the expense of further litigation. Under this factor, the Court "consider[s] the vagaries of litigation and compare[s] the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F.Supp. 2d at 1323. "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp. 2d at 1381.

This factor favors approval because the expense and complexity of further litigation would be substantial and require, among other things, extensive fact discovery, expert reports and discovery, the briefing of a motion for class certification, extensive trial preparation, trial, post-trial motion practice, and appeal. And, the outcome of litigation is uncertain.

In addition to the typical risks of non-payment present in complex class action litigation generally, the success of this Action turned on several unusually complex, novel, and difficult issues that posed many risks of non-recovery for the Class. Factually speaking, the claims alleged in the Action arose from the misclassification of certain Merchant debit card transactions as

"recurring" on account holders' bank statements. Class Representatives' theory of liability turned not on the party responsible for actually misclassifying the transactions but on the contractual promises made in the Deposit Agreement that provided immunity to the "non-recurring" variety, regardless of the classification actually assigned to a given transaction. As a result, it was necessary to conduct an investigation of Defendants' business practices, which included the various versions of the Deposit Agreement during the time period at issue, the methods of processing debit card transactions, and the nature of the relationships with Merchants and other third-parties. Hedin Decl. ¶¶ 11-14, 18; Ahdoot Decl. ¶¶ 5-8, 12.

The case involved complex legal issues as well. Over the course of the Parties' settlement negotiations as well as in Bank of America's Answer to the Complaint, Bank of America raised a number of defenses to Class Representatives' claims including, *inter alia*: (1) the Complaint fails to state a claim for breach of contract on the grounds that the Deposit Agreement authorized the assessment of overdraft fees where one-time debit card transactions were classified as "recurring" by Merchants (*see* ECF No. 10 (Answer) at 13, 15 (affirmative defenses one, two, fifteen, eighteen, and nineteen)); (2) Class Representatives failed to satisfy all "conditions precedent" to filing suit, including by not notifying Bank of America of the improperly-assessed overdraft fees at issue within the period of time set forth in both the "Reporting Problems" section of the Deposit Agreement and the Electronic Fund Transfer Act (*see id.* (affirmative defense seven)); (3) the claims alleged in the Complaint are preempted by the National Banking Act, 12 U.S.C. § 21, *et seq.* (*see id.* at 14 (affirmative defense ten)); and (4) Class Representatives' claims are barred by the applicable statute of limitations (*see id.* at 14 (affirmative defense twelve)). If Bank of America were to prevail on any one of the foregoing defenses, the case would be over, and Class Members would be entitled to no relief.

The defenses asserted by Bank of America presented difficult legal issues on which relatively little precedent exists because the Action is one of the first of its kind to present a legal challenge to the propriety of certain large categories of overdraft fees assessed against consumer deposit accounts in this country. While Plaintiffs believe they would overcome these defenses, there is no guarantee, and they must acknowledge the risks and hurdles Plaintiffs and the Class would face with continued litigation. Moreover, the continued prosecution of this action would undoubtedly entail additional time and expense, and judicial resources. Even if Plaintiffs ultimately prevailed, such efforts would have required significant additional resources, while also

delaying resolution of this action for an indeterminate time, which would create additional injury to the affected Class Members who are in need of relief. Many of the Class Members have suffered real out of pocket costs, and further delaying relief for those Class Members while the Parties continue to litigate this Action would only further prejudice them. In these circumstances, it is "proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp.2d at 1323, *quoting In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993); *see also Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.").

Against these substantial hurdles and uncertainties, the Settlement ensures a recovery now—of approximately 79% of the total revenues collected by Bank of America from Class Members—and avoids the risk of no recovery at all, whether at trial or on appeal, as well as the additional costs posed by continued litigation. *Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 469 (S.D. Fla. 2002) (fact that "absent settlement, this matter clearly will require a protracted and expensive trial and appeal, under circumstances where the ultimate results are highly uncertain" was a factor supporting settlement); *Perez*, 501 F. Supp. 2d at 1381 (approving settlement because "[w]ith the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear"). This factor therefore weighs in favor of final approval.

### C. The Record Was Sufficiently Developed to Enable Class Counsel to Make a Reasoned and Informed Judgment Regarding the Settlement

The stage of the proceedings at which settlement is achieved is "evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Saccoccio*, 297 F.R.D. at 694 (S.D. Fla. 2014) (quoting *Lipuma v. Am. Express Co.*, 406 F.Supp.2d at 1324).

As discussed above, the Parties have conducted substantial discovery, including document and data production, extensive investigation and analyses of the amount of potential recovery, independent investigations, and interviews of Bank of America employees. Hedin Decl. ¶¶ 11-14, 18; Ahdoot Decl. ¶¶ 5-8, 12. Class Counsel's experience in similar matters, as well as the efforts made by counsel on both sides confirm that they are sufficiently well apprised of the facts of this Action, and the strengths and weaknesses of the cases, to make an intelligent analysis of the proposed Settlement. Hedin Decl. ¶¶ 2-10, 35-36; Ahdoot Decl. ¶¶ 30-32.

While the Settlement occurred after the Parties engaged in discovery and investigation, that it happened prior to class certification is of no moment. Early settlements are encouraged. *Oakes*, 2016 U.S. Dist LEXIS 147252 at *5-6, quoting *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) ("The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations."); *Lipuma*, 406 F. Supp. 2d at 1324 (citation omitted) ("'Early settlements benefit everyone involved in the process and everything that can be done to encourage such settlements—especially in complex class action cases—should be done.'"). Here, Class Counsel conducted extensive investigation, analysis, and discovery concerning every aspect of this case before negotiating the Settlement, enabling them to intelligently assess the strengths and weaknesses of the Class Members' case and to determine the full scope of the damages at issue. Hedin Decl. ¶¶ 11-14, 18-22; Ahdoot Decl. ¶¶ 5-8, 12, 16. The information accumulated through Class Counsel's investigation and discovery efforts allowed them to vigorously negotiate on behalf of the Class and ultimately achieve the Settlement. This factor similarly weighs in favor of final approval.

### D.     Plaintiffs Faced Significant Obstacles with Continued Litigation

The likelihood of success on the merits is weighed against the amount and form or relief contained in the settlement." *Lipuma*, 406 F.Supp. 2d at 1319. Where success at trial is uncertain, this factor weights in favor of approving the settlement. *Newman v. Sun Capital, Inc.*, 2012 WL 3715150, at *11 (M.D. Fla. Aug. 28, 2012).

Here, Plaintiffs and the Class face risks in overcoming the defenses described above. The Settlement alleviates these risks, and provides a substantial benefit to the Class in a timely fashion. While Plaintiffs are confident that they could certify a class and prevail on the merits, they also recognize there is no guarantee of success or that any favorable judgment would be upheld on appeal. Accordingly, absent the Settlement, the Class would face real risks of recovering nothing, or an amount significantly less than the total Settlement Amount. The Class's timely, certain, meaningful and automatic recovery of $4.95 million — 79% of the total amount of money Bank of America collected from the Settlement Class in Merchant Overdraft Fees—when weighed against the risks posed by continued litigation, weighs heavily in favor of final approval.

### E.     The Benefits of the Settlement are Fair, Reasonable and Adequate When Compared to the Range of Possible Recovery

Analysis of the second and third factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined. *See In re*

*Sunbeam*, 176 F.Supp.2d at 1331. In evaluating a class settlement, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Id*. "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV, 2017 WL 9472860, at *5 (S.D. Fla. Nov. 20, 2017) *(*quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 521 (S.D. Fla. 1988).

The immediate and substantial financial relief secured for the Class represents an excellent result under the circumstances, considering that a possible recovery at trial is zero. If Plaintiffs were to certify a class and prevail on the merits, and the trier of fact accepts Plaintiffs' damage theories, the Class would recover approximately $6.28 million in overdraft fees assessed for debit card transactions made with the Merchants. The proposed Settlement thus recoups approximately 79% of the potential damages—an excellent result that ranks among the highest recoveries, on a percentage-of-total-damages basis, ever achieved in an overdraft fee class action.[4]

Far from the "fraction of the potential recovery" so often obtained for consumers in class action settlements (most of which are nonetheless routinely approved), *see Behrens*, 118 F.R.D. at 542, the $4.95 million Settlement in this case represents a substantial majority of the Settlement Class's potentially recoverable damages. Such a large recovery realized immediately weighs heavily in favor of final approval.

Moreover, unlike most class settlements where class members must submit claim forms in order to receive payments, in this case, Class Members need not submit claim forms at all to receive payments. Rather, each Class Member who does not opt out will *automatically* receive a cash payment (either by direct deposit to their bank account or *via* check to the extent their bank account is no longer open). Even after deducting all Settlement Administration Expenses, the requested Service Payments, and the Fee and Expense Award from the Settlement Fund, each

---

[4]     *Cf., e.g., In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1346 (S.D. Fla. 2011) (overdraft fee settlement against Bank of America recovering between approximately 9% and 45% of the maximum damages recoverable at trial); *Bodnar v. Bank of Am., N.A.*, No. CV 14-3224, 2016 WL 4582084, at *4 (E.D. Pa. Aug. 4, 2016) (overdraft fee settlement against Bank of America recovering between approximately 13% and 48% of the maximum damages recoverable at trial); *Farrell v. Bank of America*, Case No. 3:16-cv-00492-L-WVG (S.D. Cal.) ECF No. 69-1 at 22 (Oct. 31, 2017) (overdraft fee settlement against Bank of America recovering approximately 9% of the maximum damages recoverable at trial).

Class Member is projected to automatically receive $17.50 for *each* overdraft fee incurred as a result of a debit card transaction with any of the Merchants at issue. Many Class Members will receive hundreds of dollars automatically deposited into their Bank of America accounts or sent to them by check upon the Settlement's final approval. Thus, the recovery here is fair and adequate for Class Members based on the potential range of recovery. This factor supports approval.

### F. The Opinions of Class Counsel, the Class Representatives and the Positive Reaction of the Class Strongly Favor Approval of the Settlement

In evaluating final approval of a class action settlement, the Court may give "weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted). Here, Class Counsel have substantial experience prosecuting large, complex consumer class actions. Hedin Decl. ¶¶ 2-10; Ahdoot Decl. ¶¶ 30-32. After discovery, independent fact investigation, and mediation before a well-qualified and experienced mediator, experienced Class Counsel are confident that the Settlement provides significant relief to the Class, and is in the best interests of the Class. Hedin Decl. ¶¶ 34-36; Ahdoot Decl. ¶¶ 4, 32.

That there were no objections to the Settlement further indicates overwhelming support for the Settlement, and strongly favors its approval. The Opt-Out and Objection Deadline passed on December 20, 2019. ECF No. 30, Preliminary Approval Order ¶¶ 11, 17 (requests for exclusion or objections to the Settlement must be submitted within "ninety-five (95) calendar days after the date of the entry of this Order" [December 20, 2019]). To date, out of the 73,235 Class Members, there were no objections to the Settlement. Peak Decl. ¶ 13. This factor thus weighs in support of approval.

### IV. THE SETTLEMENT CLASS IS PROPERLY CERTIFIED

This Court provisionally certified the Class in its Preliminary Approval Order finding that the requirements of Rules 23(a) and (b)(3) were met. ECF No. 30, Preliminary Approval Order ¶¶ 1- 4, 6.[5] Since that time, there have been no developments that wold alter this conclusion.

---

[5] "For purposes of the Settlement only, the Court finds and determines that the Action may proceed as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil

Based on the facts and argument stated herein and in for the reasons set forth in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 26), class certification of the Class is well warranted in this matter. For the same reasons, also warranted are the designations of Class Counsel and the Plaintiffs as Class Representatives. *Id.* ¶ 5.[6]

### A. The Rule 23(a) Requirements are Satisfied

#### 1. The Class is so numerous that joinder is impracticable

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." No specific number is required to satisfy numerosity. However, fewer than twenty-one members is generally inadequate. *See, e.g., Jones v. Firestone Tire & Rubber Co., Inc.*, 977 F.2d 527, 534 (11th Cir. 1992) (citations omitted). Impracticability depends on the facts of each case. *See General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980) (The "numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."). Here, Bank of America's records reflect that the Class consists of approximately 73,235 persons, and joinder of all such persons is impracticable. *See Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

#### 2. There are questions of law and fact common to the Class

The second prerequisite to class certification is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2) (emphasis added). The "threshold of commonality

---

Procedure…." ECF No. 30, Preliminary Approval Order ¶ 2. "The Court finds that, for purposes of Settlement, [the] Settlement Class meets the relevant requirements of Fed. R. Civ. P. 23(a) and (b)(3) in that: (a) the number of Settlement Class Members is so numerous that joinder is impracticable; (b) there are questions of law or fact common to the Settlement Class Members; (c) the claims of the Settlement Class Representatives are typical of the claims of the Settlement Class Members; (d) the Settlement Class Representatives are adequate representatives for the Settlement Class, and have retained experienced counsel to represent them; (e) the questions of law and fact common to the Settlement Class Members predominarte over any questions affecting any individual Settlement Class Member; and (f) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. *Id.*

[6]        "[T]he Court finds and determines, pursuant to Rule 23(a)(1) of the Federal Rules of Civil Procedure, that Kenneth D. Owens, Samantha A. Holley, Nicoletta Pantelyat, Kara L. Gariglio, Isabelle Scherer, Jonathan Tule, and Kelsea D. Wiggins will fairly and adequately represent the interests of the Settlement Class in enforcing their rights in the Action, and appoints them as Settlement Class Representatives. ECF No. 30, Preliminary Approval Order ¶ 3. "[T]he Court appoints Robert Ahdoot of Ahdoot & Wolfson, PC and Frank Hedin of Hedin Hall LLP, as Settlement Class Counsel to act on behalf of the Settlement Class and the Settlement Class Representatives with respect of the Settlement." *Id.* ¶ 4.

is not high." *Campos v. INS*, 188 F.R.D. 656, 659 (S.D. Fla. 1999) (citation omitted). The "Plaintiffs' legal claims need not be completely identical to every Class Member." *Brown v. SCI Funeral Servs. Of Fla., Inc.,* 212 F.R.D. 602, 604 (S.D. Fla. 2003) (citations omitted). "[F]actual differences concerning treatment [by Defendants] or damages will not defeat a finding of commonality." *Id.* Moreover, Rule 23(a)(2) "does not require that all of the questions of law and/or fact be common to all the plaintiffs." *Campos*, 188 F.R.D. at 660. "[C]ourts in the Eleventh Circuit have held that 'a single common question is sufficient to satisfy Rule 23(a)(2) [with respect to commonality].'" *In re Terazosin Hydrocloride Antitrust Litig.*, 220 F.R.D. 672, 685 (S.D. Fla. 2004) (citation omitted).

In this case, the commonality requirement is satisfied. Many questions of law and fact are common across the Class, including whether Bank of America's Deposit Agreement – which governed the contractual relationship between Bank of America and all of its personal checking account holders – permitted the assessment of overdraft fees on "one-time," "non-recurring" debit card transactions, including those with the Merchants in question in this case. Thus, whether or not Bank of America breached a contractual obligation when it assessed overdraft fees as a result of such transactions is a question capable of resolution for all Class Members in one stroke and with common proof. Accordingly, a "classwide proceeding [will] generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

### 3. Plaintiffs' claims are typical of the claims of the Class

The third prerequisite for class certification is "typicality" set forth in Rule 23(a)(3), which provides that a class action can be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "[S]ubsection (a)(3) [of Rule 23] primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as the claims of the class at large." *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir. 1985) (citations omitted). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Campos*, 188 F.R.D. at 659. The typicality requirement, like commonality, is not demanding. *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).

Plaintiffs' claims arise out of the same event, practice or course of conduct that gives rise to the claims of the other Class Members and are based on the same legal theory. Plaintiffs, like

all Class Members, were each subject to the same, uniform contract with Bank of America, and were each assessed one or more overdraft fee as a result of a debit card transaction with a Merchant that was not set up automatically to occur at a pre-set interval of time. Here, Plaintiffs all bring the same claim for breach of contract, on behalf of themselves and all Class Members, and they all seek to recover the same amount of damages for each allegedly improper overdraft fee on behalf of themselves and all Class Members. Thus, the same factual and legal basis underlying Plaintiffs' claims also serves as the basis for the claims of all potential Class Members.

### 4. Plaintiffs will fairly and adequately represent the Class

The fourth and final prerequisite under Rule 23(a) is the "adequacy of representation" requirement contained in Rule 23(a)(4). The inquiry under Rule 23(a)(4) has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class"; and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (citation omitted). Adequacy of representation is usually presumed in the absence of evidence to the contrary. *Access Now, Inc. v. AHM CGH, Inc.*, 2000 U.S. Dist. LEXIS 14788 (S.D. Fla. 2000) (citation omitted).

Here, proposed Class Representatives challenge the same allegedly unlawful conduct that each Class Member challenges, seek the same monetary relief that is sought by each Class Member, and seek to maximize the recovery to the Settlement Class through this litigation. Class Representatives' interests are aligned with the interests of Class Members, and none of them have any interest that is antagonistic to the claims of any Class Member. Hedin Decl. ¶ 24; Ahdoot Decl. ¶ 22. Moreover, proposed Class Representatives have vigorously prosecuted this Action in the interests of the Class. Hedin Decl. ¶ 24; Ahdoot Decl. ¶¶ 22-24. Their active participation is strong evidence that Plaintiffs are adequate representatives of the Class. Likewise, Class Counsel have vigorously represented Plaintiffs and the Class throughout this litigation. Class Counsel are experienced and competent in this type of litigation and well-qualified to serve as counsel through the remaining stages of the Settlement. Hedin Decl. ¶¶ 34-36; Ahdoot Decl. ¶¶ 30-31.

### B. The Requirements of Rule 23(b)(3) are Satisfied

Rule 23(b)(3) requires a movant to show two elements: (1) that common questions predominate over individual questions; and (2) that a class action is a superior procedural vehicle rather than separate individual cases.

### 1. Common Questions Predominate

The predominance requirement of Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of the individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). It "does not require that all issues be common to all parties, rather it mandates that resolution of the common liability questions affect all or a substantial number of the class members." *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 692 (N.D. Ga. 2003) (citation omitted). Central to the predominance inquiry is the "value the resolution of the class-wide issue will have in each class member's underlying cause of action." *In re Tri-State Crematory Litig.*, 215 F.R.D. at 692 (citations omitted). Common questions of law or fact predominate when "there are common liability issues which may be resolved efficiently on a class-wide basis." *Brown*, 215 F.R.D. at 606.

Here, the predominance requirement is satisfied because liability questions common to all Class Members substantially outweigh any possible issues that are individual to each Class Member. Each Class Member's relationship with Bank of America is governed by the same contract, the Deposit Agreement. The central common question is whether Bank of America breached its uniformly-imposed Deposit Agreement by assessing overdraft fees as a result of debit card transactions with Merchants that were not set up to occur automatically at pre-set intervals of time. The salient evidence necessary to establish Plaintiffs' claims are common to all members of the Class. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) ("[If] common issues truly predominate over individualized issues in a lawsuit, then 'the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.'") (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 322 (5th Cir. 1978)).

### 2. Class Treatment of Plaintiffs' Claims is Superior

The second prong of Rule 23(b)(3) requires a court to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Sacred Heart Health*, 601 F.3d at 1183 (citing Fed. R. Civ. P. 23(b)(3)). The focus of the analysis is on "the relative advantages of a class action suit over whether other forms of litigation might be realistically available to the plaintiffs." *Id.* (quoting *Klay*, 382 F.3d at 1269). In this case, the Court should "consider whether the class members would be aware of their rights" absent class

certification, and also "the improbability that large numbers of class members would possess the initiative to litigate individually." *Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 318 (S.D. Fla. 2001) (citations omitted). Class actions are meant to promote "economies of time, effort and expense, assuring uniformity and avoiding repetitive actions." *Id.*

A class action is the superior method for the fair and efficient adjudication of these claims. Plaintiffs' claims are shared by approximately 73,228 other consumers, each of whom incurred at least one overdraft fee as a result of a non-recurring debit card transaction with a Merchant, in breach of the same Deposit Agreement, during the same period of time. Because the amount of each individual Class Member's claim is small in comparison to the costs of litigation, it is unlikely that any Class Member would expend the resources to pursue individual litigation absent the Settlement. Moreover, individual litigation would significantly increase the delay and expense to all parties and to the Court, and would create the potential for inconsistent or contradictory rulings. By contrast, the resolution of the claims of all Class Members in a single proceeding promotes judicial efficiency, avoids inconsistent decisions, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"). Thus, resolution of the claims alleged in this Action through a settlement class is far superior to a multiplicity of individual lawsuits. *See* Fed. R. Civ. P. 23(b)(3).

Accordingly, the Rule 23 factors having been met, Class Representatives request that the Court confirm its preliminary decision and finally certify the Class.

## V.   CONCLUSION

For the foregoing reasons, Class Representatives request that the Court finally certify the proposed Settlement Class for settlement purposes, finally approve the proposed Settlement as fair, reasonable, and adequate, and enter the proposed Final Approval Order and Judgment submitted herewith.

DATED:  January 8, 2020

Respectfully submitted,

By: s/ *Frank S. Hedin*
     Frank S. Hedin

FRANK S. HEDIN
Florida Bar No. 109698
fhedin@hedinhall.com
**HEDIN HALL LLP**
1395 Brickell Ave, Suite 900
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801

ROBERT AHDOOT (*pro hac vice*)
rahdoot@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111
Fax: (310) 474-8585

*Counsel for the Settlement Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 8, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*s/ Frank S. Hedin*
Frank S. Hedin

**HEDIN HALL LLP**
FRANK S. HEDIN
fhedin@hedinhall.com
1395 Brickell Ave, Suite 900
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801